IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CAROLE SOLLOWAY,

      Plaintiff,

  v.

MARY JO WHITE, *as Chairman of the Securities and Exchange Commission*,

      Defendant.

CIVIL ACTION FILE

NO. 1:13-CV-03827-TWT-WEJ

## **FINAL REPORT AND RECOMMENDATION**

Plaintiff, Carole Solloway, filed this action [47][1] alleging that her employer, the Securities and Exchange Commission ("SEC"), violated her rights under the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, et seq. ("RHA"), the Privacy Act, 5 U.S.C. § 552a, and Title VII of the Civil Rights Act of 1964, as

---

[1] Plaintiff filed a Second Amended Complaint on August 11, 2015. (See Second Am. Compl.) Only the claims set forth in the Second Amended Complaint are before the Court. See Varnes v. Local 91, Glass Bottle Blowers Ass'n, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading.").

amended, 42 U.S.C. §§ 2000e, <u>et seq.</u> ("Title VII").[2]  Now pending before this Court is defendant's Motion for Summary Judgment [110].   For the reasons explained below, the undersigned **RECOMMENDS** that said Motion be **GRANTED**.

## I.   <u>STATEMENT OF FACTS</u>

The Court draws the material facts largely from the parties' submissions. In support of its Motion for Summary Judgment, defendant as movant filed a Statement of Undisputed Material Facts ("DSMF") [110-2].  <u>See</u> N.D. Ga. Civ. R. 56.1B.(1).  As required by Local Rule 56.1B.(2)a, plaintiff submitted a response. (<u>See</u> Pl.'s Resp. to Def.'s Statement of Material Facts ("R-DSMF") [114-1].)  As allowed by Local Rule 56.1B.(2)b, plaintiff filed a statement of additional facts which she contends are material and present a genuine issue for trial (<u>see</u> Pl.'s Statement of Material Facts [114-2] ("PSMF")), to which defendant submitted a

---

[2]  On October 17, 2016, the parties stipulated to plaintiff's withdrawal of her claims of harassment and hostile work environment under the RHA (Counts II and V), violations of the Privacy Act (Count VI), and gender discrimination under Title VII (Counts VII and VIII).  (<u>See</u> Joint Stipulation to Withdraw Claims [108].)   Accordingly, the only remaining claims are failure to accommodate, retaliation, and discrimination in violation of the RHA (Counts I, III, and IV).

response.  (See Def.'s Resp. to Pl.'s Statement of Material Facts [122-1] ("R-PSMF").)

Where a party admits a fact proposed by the other, the Court accepts the admission as an undisputed fact for the purposes of this Report and Recommendation and cites both the proposed fact and the corresponding admission.  When a party denies a proposed fact, the Court reviews the record and determines whether that denial is supported by record evidence, and if it is, whether any fact dispute is material.[3]  The Court excludes immaterial proposed facts.[4]  The Court sometimes modifies a proposed fact per the other party's

---

[3] In R-DSMF ¶¶ 7, 11, 30, 32, 67(a)-(c), and 97(a)-(d), plaintiff states that she does not dispute defendant's fact but proposes additional facts "by way of further response."  The Local Rules require that the non-movant's response to the statement of facts contain "concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts."  N.D. Ga. Civ. R. 56.1B.(2)a.(1).  Plaintiff's responses violate the Local Rules to the extent they contain improper argument or additional facts.  See Walker v. United States, IRS, No. 4:07-CV-0102-HLM, 2009 WL 1241929, at *3-4 (N.D. Ga. Feb. 26, 2009) ("[P]laintiff[] must remember that a response to a statement of undisputed material facts is not an opportunity to write another brief. If the fact stated is true, admit it. If the fact is legitimately disputed, then say why, cite the evidence that supports the denial, and stop.") (alteration in original) (quoting Darnell v. Ga. Power Co., No. 4:04-CV-0166-HLM, slip op. at 8 (N.D. Ga. Dec. 21, 2005) (footnote omitted)). Accordingly, the Court accepts plaintiff's admissions to these facts and does not consider any additional proposed fact or argument.

[4] The Court excludes DSMF ¶ 34 as immaterial, and DSMF ¶ 63 as stating

3

response to better reflect the record.[5]   The Court also rules on objections to proposed facts.[6]   Finally, the Court includes some facts drawn from its own review of the record.  See Fed. R. Civ. P. 56(c)(3).

### A.    Plaintiff's Employment with the SEC

Ms. Solloway is an SK-14 Staff Accountant in the SEC's Atlanta Regional Office ("ARO").  (DSMF ¶ 1; R-DSMF ¶ 1.)  Plaintiff is a member of the National Treasury Employees Union ("NTEU").  (Solloway Dep. [115][7] 50.)

---

an improper legal conclusion.

[5] In R-PSMF ¶¶ 7-10, 26-31, 38-39, 50, and 86, defendant does not dispute plaintiff's proposed fact but states that to the extent the facts "allege[] or infer[] other facts," or are intended to cover other time periods, "they are not supported by the cited evidence."  The Court accepts defendant's admissions and does not consider these argumentative objections.

[6] Plaintiff disputes several of defendant's proposed facts because they contain multiple statements in violation of the Local Rules.  (See R-DSMF ¶¶ 9, 20, 43, 45, 72-73, and 91-92.)  While plaintiff is correct that the Local Rules require that "[e]ach material fact must be numbered separately," the Court will not exclude facts on that basis alone.  See Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985) (per curiam) (noting the Eleventh Circuit's "strong preference that cases be heard on the merits," rather than letting disputes be decided based on procedural errors or technicalities).  The Court addresses infra plaintiff's remaining objections to these facts in the note following each fact.

[7] For ease of reference, the Court cites to the deposition transcripts of plaintiff [115], Askari Foy [116], Rhea K. Dignam [117], Olivia Beauchain [118], and Michael Vaughn [119] filed by plaintiff rather than to those filed by defendant because plaintiff has included the entirety of each of those transcripts.

### B.    Plaintiff's Post-Traumatic Stress Disorder

In 1997, Ms. Solloway was kidnapped, raped, sodomized, and strangled. (PSMF ¶ 1; R-PSMF ¶ 1.)  This experience caused her to suffer from post-traumatic stress disorder ("PTSD"), depression, and anxiety.  (DSMF ¶ 2; R-DSMF ¶ 2; PSMF ¶ 2.)[8]  These conditions manifest themselves in crying spells, nightmares, insomnia, sleep disturbances, poor concentration, immobility, rapid heartbeat, sweaty palms, stomach problems, and trembling hands. (PSMF ¶ 3; Pl. Ex. 16 [113-16], at 2.)[9]  Ms. Solloway has been under the care of Dr. Michael Roy Vaughn, a psychiatrist, for her PTSD, depression, and anxiety since 2008.

———————————

[8] Defendant does not dispute Ms. Solloway's diagnoses, but states that the record citation does not support PSMF ¶ 2's contention that they date to 1997. (R-PSMF ¶ 2.)  Given defendant's undisputed proposed fact DSMF ¶ 2, which states that plaintiff has a history of PTSD dating from 1997, the Court overrules the objection.

[9] Defendant disputes PSMF ¶ 3's list of symptoms.  (R-PSMF ¶ 3.) Defendant assumes that plaintiff's citation is to paragraph four of her Exhibit 1, Ms. Solloway's declaration ("Solloway Decl." [113-1]), which is not supportive of the proposed fact.  Plaintiff's citation, to "Solloway Dep., Ex. 1," appears to cite the first exhibit to her deposition, not to her declaration. Exhibit 1 to Ms. Solloway's deposition is an FMLA Leave Request Form, and is also not supportive of her proposed fact.  (See Solloway Dep. Ex. 1 [115-1].)  However, each of the symptoms listed in PSMF ¶ 3 is noted on a second FMLA Form filed June 28, 2011.  (See Pl. Ex. 16 [113-16], at 2.)  Accordingly, the Court assumes plaintiff intended to cite to this document, rather than the first FMLA Form, and overrules defendant's objection.

5

(Vaughn Dep. [119] 4, 6.)  From 2008 to 2010, she did not suffer substantial limitations due to these conditions.  (PSMF ¶ 4; R-PSMF ¶ 4.)[10]

### C.      Plaintiff's Concerns Regarding Her Supervisor

In 2009, plaintiff's first-line, immediate supervisor ("ARO Employee")[11] was disciplined after the SEC's Office of Inspector General (the "OIG") determined that he had accessed pornographic websites while at work.  (DSMF ¶ 3; R-DSMF ¶ 3.)  In March 2011, Ms. Solloway obtained a redacted copy of an OIG report (the "OIG Report") concerning ARO Employee and this discipline.  (DSMF ¶ 4; R-DSMF ¶ 4.)  After reading the OIG Report and learning that it discussed and referred to ARO Employee, Ms. Solloway became uncomfortable being around him, because his use of his government computer to access pornographic images and websites reminded her of her past kidnapping and

---

[10] Defendant does not dispute that Ms. Solloway was suffering substantial limitations from 2008 to 2010, but "disputes this statement to the extent [it] is intended to infer that Plaintiff was disabled at other times."  The Court accepts defendant's admission and does not include the remainder of R-PSMF ¶ 4.

[11] The Court follows the parties' convention of referring to plaintiff's former immediate supervisor as "ARO Employee," rather than by name.

sexual assault, which triggered her PTSD, anxiety, and depression.  (DSMF ¶ 5[12];

PSMF ¶¶ 5[13]-6[14].)

---

[12] Plaintiff disputes DSMF ¶ 5's statement that she was uncomfortable around ARO Employee as "misleading" because "it implies that [she] had some personal issue with ARO Employee."  (R-DSMF ¶ 5.)  Plaintiff contends that she was uncomfortable because of ARO Employee's use of his government computer to access pornographic images, which reminded her of her past sexual assault and triggered her PTSD, anxiety, and depression.  (Id.)  Plaintiff's contention is supported by the record citation.  (See Solloway Dep. [115] 88 ("Q. Okay. I guess the way that the doctor and Ms. Beauchain characterized your problems with ARO Employee was that it, I guess, triggered or aggravated the existing PTSD and anxiety and depression?  A. Yes").)  The Court modifies the proposed fact to better reflect the record.

[13] Defendant disputes PSMF ¶ 5, which states that the fact that Ms. Solloway had not been experiencing symptoms changed when she learned that ARO Employee had been viewing pornography in the office during work hours.  (R-PSMF ¶ 5.)  Defendant does not dispute that plaintiff experienced symptoms of PTSD in early 2011 but "objects to other alleged facts as they are not supported by the cited evidence."  (Id.)  Plaintiff's record citation, to the third paragraph of her declaration, supports her proposed fact.  (See Solloway Decl. [113-1] ¶ 3 ("However, in 2011, after reading an OIG report documenting that my supervisor, ARO Employee, was accessing and viewing pornography while at work and that some of the pornography contained images of bondage, I began to experience debilitating symptoms of my diagnoses.").)  Accordingly, the Court overrules defendant's objection to PSMF ¶ 5.

[14] Defendant does not dispute that plaintiff told LCSW Beauchain that what she read about ARO Employee triggered her PTSD, but disputes "the remaining facts" in PSMF ¶ 6, apparently that her attacker and ARO Employee shared characteristics, as unsupported by the record cited.  (Id.)  Defendant is correct that plaintiff's record citations do not show that the two men shared characteristics.  (See Beauchain Dep. [118] 21:16-21 ("She had found out that her boss had the porn, and it was triggering her basically, she said, because she had been abducted

Plaintiff's Licensed Clinical Social Worker ("LCSW"), Olivia Beauchain, testified that experiencing anxiety triggered from a previous attack is not unusual for someone suffering from PTSD:

> Q. You wrote anxiety triggered from attack years ago.  Was your assessment that she was still feeling the effects or reacting from that old attack?  A. Yes. Yes.  It's not uncommon for people with PTSD.  They can go along, but something or someone can happen and [act as a] trigger.  It's like in their mind [the original trauma] is happening now.  They can't distinguish the past and the present in the subconscious mind.

(PSMF ¶ 7; R-PSMF ¶ 7; Beauchain Dep. [118] 41:23-42:5.)[15]  When Ms. Solloway's PTSD, depression and anxiety are triggered, life becomes very difficult, as she does not sleep for days; cannot get out of bed or leave her home; suffers from diarrhea; shakes uncontrollably; and cannot focus or think straight. (PSMF ¶¶ 8-9; R-PSMF ¶¶ 8-9.)  Dr. Vaughn testified that plaintiff had problems with "focus, concentration, keeping track of her workflow, severe anxiety, feeling

---

and raped by a person that she didn't know, and what she read reminded her of what she went through, so it triggered a lot of -- that was her trigger."); Vaughn Dep. [119] 43:1-2 ("Boss now coworker is a trigger for PTSD from being kidnapped.").)  Accordingly, the Court modifies the proposed fact.

[15] Plaintiff began seeing LCSW Beauchain for counseling on April 22, 2011.  (DSMF ¶ 11, R-DSMF ¶ 11; Beauchain Dep. [118] 13.)

8

horrible, being trapped in her office, [and having] panic attacks interfere[e] with her work." (PSMF ¶ 10; R-PSMF ¶ 10; Vaughn Dep. [119] 47:11-22.)

Ms. Solloway raised her concerns about ARO Employee with her supervisors, Howard Dennis and Askari Foy, at meetings in March and April 2011. (DSMF ¶ 6; R-DSMF ¶ 6; PSMF ¶ 11; R-PSMF ¶ 11.)[16]  Plaintiff conveyed that, since learning about ARO Employee's past conduct through the OIG Report, she had become anxious about the possibility of seeing or interacting with him. (DSMF ¶ 7, R-DSMF ¶ 7.)

### D.    Telework Policy at the ARO

The ARO had a liberal telework policy and ad hoc requests were rarely denied. (PSMF ¶ 18; Foy Dep. [116] 26:5-12; Solloway Dep. [115] 165.)[17]  The ARO was unique among SEC offices for the extent to which it granted telework:

_____

[16] Defendant does not dispute that Ms. Solloway began discussing "concerns" with her supervisors, but objects to PSMF ¶ 11 as immaterial because she did not claim she had a disability or request a reasonable accommodation until June 2011. (R-PSMF ¶ 11.)  The Court accepts defendant's admission and overrules the objection as argumentative, particularly given that the undisputed DSMF ¶ 6 is nearly identical to plaintiff's proposed fact.

[17] Defendant does not dispute that Mr. Foy testified that the ARO had a liberal telework policy, but contends that this was only in the context of explaining why it was reasonable to ask employees to come into the office for monthly meetings. (R-PSMF ¶ 18.)  Reading the facts in the light most favorable

[O]ur office was one of the most liberal offices as it relates to granting and approving telework. So that practice that we established was outside the norm across other regional offices and headquarters. So we were very liberal in accommodating given our office.

(PSMF ¶ 22; R-PSMF ¶ 22; Foy Dep. [116] 131.)[18]

The collective bargaining agreement in place at the time (the "CBA") provided for two types of telework, ad hoc and recurring. (PSMF ¶ 20, as modified per R-PSMF ¶ 20; PSMF ¶ 23, as modified per R-PSMF ¶ 23; PSMF ¶ 59, as modified per R-PSMF ¶ 59; PSMF ¶ 60, as modified per R-PSMF ¶ 60; CBA [113-3] at SEC Bates 10129-30.)[19]

---

to plaintiff, Mr. Foy's testimony applies to the ARO's teleworking policy generally, so the Court overrules defendant's objection. The Court also overrules the materiality objection because the ARO's attitude toward telework is relevant.

[18] Defendant does not dispute PSMF ¶ 22 but contends it is immaterial. (R-PSMF ¶ 22.) The Court overrules defendant's materiality objection for the reasons stated supra note 17.

[19] The parties dispute the availability of full-time telework under the CBA. (See PSMF ¶¶ 19-20, 23, 59-60; R-PSMF ¶¶ 19-20, 23, 59-60.) Defendant objects to PSMF ¶ 20, which states that the CBA provided for up to five days of telework; to PSMF ¶ 23, which quotes the CBA and states that it provided for up to five days of telework through a combination of recurring and ad hoc days; and to PSMF ¶ 60, which states in part that the CBA provided for up to five days of weekly telework. Defendant contends that the evidence does not establish that the SEC's policies permitted permanent, recurring full-time telework. (R-PSMF ¶¶ 19-20, 23, 60.) Defendant also disputes PSMF ¶ 19, stating that ad hoc telework permitted "some people" to telework up to five days per week, as vague, and PSMF ¶ 59, which states that the ARO had a liberal telework policy that

10

### 1.   Ad Hoc Telework Arrangements

An ad hoc telework arrangement was defined as telework "on an occasional basis, to work on a specific assignment on a short-term basis." (CBA [113-3] at SEC Bates 10130.)  Typically, ad hoc telework would be appropriate for an assignment that would "require uninterrupted concentration and . . . result in measurable work outputs (e.g., reviewing court opinions, writing opinions, or drafting reports)." (Id.)  Additionally, "an ad hoc telework arrangement normally will last for one, two, or three days, but may be for up to five days under exceptional circumstances." (Id.)  The ad hoc policy was also flexible enough that it allowed injured employees to work from home four or five days per week for an extended period of time. (PSMF ¶ 24; R-PSMF ¶ 24.)[20]  For instance, when plaintiff's co-worker, Gannon Lasseigne, underwent back surgery and

_____

permitted at least two days of reoccurring telework and one day of ad hoc telework per week, because "telework was not an entitlement." (R-PSMF ¶¶ 19, 59.)  The Court modifies PSMF ¶¶ 20, 23, and 59-60 per the relevant provisions of the CBA, which speak for themselves.  The Court further sustains defendant's objection to PSMF ¶ 19 as vague and excludes that proposed fact. (See CBA[113-3] at SEC Bates 10129-30.)

[20] Defendant does not dispute PSMF ¶¶ 24-25, but states that these facts are immaterial because they describe short-term arrangements, distinct from the permanent full-time telework Ms. Solloway requested. (R-PSMF ¶¶ 24-25.)  The Court accepts defendant's admissions and does not include the remaining statements in R-PSMF ¶¶ 24-25.

11

needed a standing desk, he was granted at least twelve weeks of full-time telework until the desk arrived.  (PSMF ¶ 25; R-PSMF ¶ 25; PSMF ¶ 85; R-PSMF ¶ 85.)[21]

## 2.    Recurring Telework Arrangements

A recurring telework arrangement was defined as telework "when there is a recurring opportunity to perform work at the employee's home or another approved alternative work site for a maximum of two (2) days a week."  (CBA [113-3] at SEC Bates 10129-30.)  To be eligible to request a recurring telework arrangement, an employee had to meet the following criteria:  (1) the employee's work did not require frequent face-to-face interaction with supervisors, co-workers, or others, or the use of the telephone or email was an appropriate substitute for frequent face-to-face interaction; (2) the employee did not require specialized equipment or reference materials only available at the office, unless access to such equipment or reference materials could be grouped and scheduled for a time when the employee was in the office; (3) the employee did not require

---

[21] Defendant does not dispute that Mr. Lasseigne teleworked full time for a temporary period while he recovered from surgery, but contends that plaintiff's fact is immaterial because this was not the accommodation she sought.  (R-PSMF ¶ 85.)  The Court accepts defendant's admission and does not include the remaining statements in R-PSMF ¶ 85.

12

frequent or close oversight or supervisory consultation; and (4) the employee did not require frequent access to confidential and sensitive information not available outside the office.  (PSMF ¶ 16, as modified per R-PSMF ¶ 16; CBA [113-3] at SEC Bates 10130-31.)[22]  Telework was "not an entitlement" and the SEC retained discretion to grant or deny any request in accordance with the CBA.  (CBA [113-3] at SEC Bates 10129-33.)

### E.    Plaintiff's Initial Telework Request

Before explaining her disability to supervisors or seeking telework as an accommodation, Ms. Solloway submitted an application in April 2011 for full-time telework through an expanded telework program.  (PSMF ¶¶ 12, 14, as modified per R-PSMF ¶¶ 12, 14; Dignam Dep. [117] 82:19-23, 91:15-20, 92:24-4; Solloway Dep. [115] 108:4-10, 110:11-20)[23]  The expanded telework program

---

[22] Defendant disputes that these criteria were required to be eligible to request recurring telework, and states that telework was not an entitlement.  (R-PSMF ¶ 16.)  The record supports defendant's assertions.  (See CBA [113-3] at SEC Bates 10129 ("telework is not an entitlement"), 10130 ("An employee is eligible to request a recurring telework arrangement if [the above criteria are met].") (emphasis added).)  Accordingly, the Court modifies PSMF ¶ 16 to reflect the record and includes the CBA's statement that telework was not an entitlement in the text following this note.  The Court overrules defendant's materiality objection for the reasons stated supra note 17.

[23] Defendant disputes PSMF ¶¶ 12-14, describing plaintiff's application for

13

was a pilot program opened in 2008 and closed twenty-four months later. (PSMF ¶ 13, as modified per R-PSMF ¶ 13; CBA [113-3] at SEC Bates 10139.) Plaintiff's application was denied because the program was no longer open to new participants. (PSMF ¶ 12.) However, there was no objection from the NTEU to approving expanded telework for Ms. Solloway, or evidence that the SEC sought NTEU guidance regarding whether an expanded telework schedule would violate the CBA. (PSMF ¶ 21; R-PSMF ¶ 21.)[24]

### F.    Plaintiff's April 8, 2011 Telework Request

Ms. Solloway next submitted a request on April 8, 2011 to telework two days per week. (DSMF ¶ 8; R-DSMF ¶ 8; PSMF ¶ 15; R-PSMF ¶ 15.) Ms. Solloway met the required qualifications as outlined in the CBA, and ARO

---

expanded telework, as immaterial, because she had not yet claimed she had a disability or requested a reasonable accommodation, and because defendant contends that plaintiff knew that she was not eligible for the program when she applied. (R-PSMF ¶¶ 12-14.) The Court finds that the facts surrounding each of plaintiff's applications for telework are material. However, the Court sustains defendant's objections and modifies these facts to fully reflect the record, which does indicate that plaintiff had not yet claimed she had a disability, and that plaintiff knew the program was not open to new participants when she applied. (See DSMF ¶ 49; R-DSMF ¶ 49; Solloway Dep. [115] 108:4-10, 110:11-20; Dignam Dep. [117] 82:19-23, 91:15-20, 92:24-4; CBA [113-3] at SEC Bates 10139, Pl. Ex. 5 ("Lasseigne Decl.") [113-5] ¶ 6; Pl. Ex. 11, at 2.)

[24] Defendant does not dispute PSMF ¶ 21 but contends it is immaterial. The Court includes the proposed fact for background purposes.

14

management approved her request to telework two days per week on April 18, 2011. (DSMF ¶ 9; R-DSMF ¶ 9; PSMF ¶ 17, as modified per R-PSMF ¶ 17.)[25]

### G.    ARO Employee Steps Down as Plaintiff's Supervisor

Also in April 2011, ARO Employee voluntarily stepped down to a staff-level position, and the ARO instructed ARO Employee to have no contact with Ms. Solloway.  (DSMF ¶ 9, as modified per R-DSMF ¶ 9.)[26]  Shortly after stepping down, ARO Employee ignored the no-contact order, calling and texting Ms. Solloway on her personal phone, wanting to know if she was in the office.

---

[25] Plaintiff does not dispute that defendant granted her request for two-day recurring telework, but contends that two days of recurring telework is not an "accommodation" because it was available to all employees. (R-DSMF ¶ 9.) The Court overrules this objection as argumentative, particularly given that defendant's proposed fact does not mention the word "accommodation." Defendant disputes that Ms. Solloway's request was approved "based solely on the criteria" for recurring telework arrangements listed infra Part I.D.2. (R-PSMF ¶ 17.)  Defendant does not cite record evidence in support of its contention, and PSMF ¶ 17 does not state that she was approved based on those criteria alone. Accordingly, the Court overrules defendant's objection.  The Court declines to consider the remainder of defendant's argumentative response.

[26] Plaintiff disputes DSMF ¶ 9's assertion that ARO Management removed ARO Employee as her supervisor.  (See R-DSMF ¶ 9.)  She contends that ARO Employee voluntarily stepped down.  (Id.)  Because the record citation supports her contention, the Court modifies the proposed fact.  (See Foy Dep. [116] 37 ("ARO Employee voluntarily stepped down to staff").)

15

(PSMF ¶ 26; R-PSMF ¶ 26.)  When plaintiff arrived at work, she closed her door and ARO Employee began banging on it.  (PSMF ¶ 27; R-PSMF ¶ 27.)

### H.    Ms. Solloway Continues to Experience Symptoms

Ms. Solloway tried to tough it out, but sometimes when she would try to leave for work in the morning, she became immobilized by her PTSD and could not make herself walk through the door.  (PSMF ¶ 28; R-PSMF ¶ 28; Solloway Dep. [115] 60, 66; Solloway Decl. [113-1] ¶ 4.)  She experienced diarrhea and uncontrollable shaking, had trouble focusing, and could not think straight. (PSMF ¶¶ 29-30; R-PSMF ¶¶ 29-30; Solloway Dep. [115] 60, 66; Solloway Decl. [113-1] ¶ 4.) [27]

### I.    Plaintiff's June 2011 FMLA Leave and Accommodation Request

On June 2, 2011, plaintiff met with ARO Regional Director Rhea Dignam and raised her concerns about ARO Employee.  (DSMF ¶ 10; R-DSMF ¶

---

[27] Defendant disputes PSMF ¶ 31, which states that plaintiff begged and pleaded with Mr. Dennis and Mr. Foy to allow her additional telework so that she would not have to take Family and Medical Leave Act ("FMLA") leave.  (R-PSMF ¶ 31.)  Defendant contends that although plaintiff did testify that she was "begging and pleading" for full-time telework in mid-2011, the record cited does not show that she presented this request as an alternative to FMLA leave.  (Id.) Rather, Ms. Solloway testified that she was "begging and pleading" with regards to being included as an exception to the pilot program.  (See Solloway Dep. [115] 110:14-20.)  The Court sustains defendant's objection and excludes PSMF ¶ 31.

10; PSMF ¶ 33; R-PSMF ¶ 33.)  At this meeting, she gave Ms. Dignam an FMLA leave form dated May 10, 2011, signed by Dr. Vaughn.  (DSMF ¶ 12, as modified per R-DSMF ¶ 12; PSMF ¶ 33; R-PSMF ¶ 33; Solloway Dep. Ex. 1 [115-1].)[28] The FMLA form explained that Ms. Solloway had been diagnosed with PTSD, depression, and anxiety; that her condition was "triggered" by the "possibility of contact with [ARO Employee]"; that the approximate date the condition commenced was March 31, 2011; and that the estimated length of incapacity was from May 25, 2011, to July 5, 2011.  (DSMF ¶ 13; R-DSMF ¶ 13; Solloway Dep. Ex. 1 [115-1], at 2-3.)

During this meeting, plaintiff and Ms. Dignam also discussed the possibility of teleworking four or five days per week as an alternative to FMLA leave.  (DSMF ¶ 14, as modified per R-DSMF ¶ 14; PSMF ¶ 34; R-PSMF ¶ 34.)[29] Plaintiff told Ms. Dignam that she was "always capable of teleworking" and

_____

[28] Plaintiff disputes DSMF ¶ 12 because she contends that the form was signed by Dr. Vaughn, not LCSW Beauchain.  (R-DSMF ¶ 12.)  Because the record citation supports her contention, the Court modifies the proposed fact. (See Vaughn Dep. [119] 57-58; Solloway Dep. [115] Ex. 1.)

[29] Plaintiff disputes DSMF ¶ 14's contention that she raised the possibility of teleworking four or five days per week.  (R-DSMF ¶ 14.)  She contends that it was Ms. Dignam's suggestion.  (Id.)  Although which party first suggested teleworking is not material, the Court modifies the proposed fact above.

would not "have to resort to the FMLA" if she could telework four or five days per week.[30]  (DSMF ¶ 15.)[31]  Ms. Dignam informed plaintiff that what she was really asking for was a reasonable accommodation and put her in touch with the disability office.  (PSMF ¶ 35; R-PSMF ¶ 35.)

On June 3, 2011, Ms. Dignam forwarded plaintiff's FMLA request to the SEC's Office of Human Resources ("OHR") and the SEC's Disability Program Office ("DPO"), and spoke with DPO Officer Laura Stomski regarding plaintiff's request.  (DSMF ¶ 16; R-DSMF ¶ 16.)[32]  On June 8, 2011, Ms. Solloway made a

---

[30] Defendant disputes PSMF ¶ 32, which contends that her request fell squarely within the terms of telework under the CBA and SEC policies.  (R-PSMF ¶ 32.)  Defendant contends that plaintiff's record citation does not establish that those policies permitted permanent, recurring full-time telework.  (Id.)  Plaintiff cites to the CBA, which explains the two-day recurring telework option and the one-to-three day ad hoc telework option; to the Lasseigne Declaration, where Mr. Lasseigne describes receiving full-time telework on a short-term basis due to surgery; and to Mr. Foy's deposition, where he testifies that the ARO was very liberal regarding telework but had an internal three-day per week maximum.  (See PSMF ¶ 33.)  Defendant is correct that none of these sources show that the ARO offered permanent, full-time telework.  Accordingly, the Court excludes PSMF ¶ 32.

[31] Plaintiff objects to DSMF ¶ 15 as misleading because it omits Ms. Dignam's role in suggesting telework.  (R-DSMF ¶ 15.)  As discussed supra note 29, it is immaterial who first suggested telework.

[32] Plaintiff does not dispute DSMF ¶ 16, but contends it is immaterial.  (See R-DSMF ¶ 16.)  Because the details surrounding plaintiff's accommodation requests are relevant, the Court includes the proposed fact.

verbal request to Ms. Stomski for a reasonable accommodation, and Ms. Stomski encouraged Ms. Solloway to be creative regarding proposed accommodations in her follow-up written request.  (PSMF ¶ 37, as modified per R-PSMF ¶ 37; Solloway Dep. [115] 135, 211.)[33]

## J.    Plaintiff's June 2011 Written Request for Accommodation

On June 15, 2011, while her FMLA request was pending, Ms. Solloway requested the following in writing as "reasonable accommodations" under the RHA:  indefinite full-time telework until ARO Employee no longer works at the SEC; a minimum of one week of advance notice of ARO Employee's schedule; the ability to decline being assigned to any project, team, or examination with ARO Employee; and provision of an "alternative liaison" in Washington, D.C. or

---

[33] Defendant disputes PSMF ¶ 37, which states that while Ms. Solloway's verbal request was for liberal telework, the disability officer, Rebecca Pikofsky, encouraged her to be creative regarding proposed accommodations in her written request.  Defendant contends that the cited testimony indicates that plaintiff made a verbal request to Ms. Stomski for a reasonable accommodation only.  (R-PSMF ¶ 37.)  The cited testimony shows that plaintiff did make such a request, and supports plaintiff's contention that she was encouraged to be creative in the written request, albeit by Ms. Stomski.  (See Solloway Dep. [115] 135:14-16 ("[S]o essentially Laura Stomski had told me, you know, pretty much -- you know, be creative or whatever you can think of.").)  The Court modifies PSMF ¶ 37 to better reflect the record.

another office for all instances in which ARO Employee was the "point of contact" representing the ARO.  (DSMF ¶ 19; R-DSMF ¶ 19; PSMF ¶ 36; R-PSMF ¶ 36.)

Ms. Solloway testified that in this request, she listed everything she could think of that might possibly work.  (PSMF ¶ 38; R-PSMF ¶ 38.)  She testified that she expected that the accommodation process would be collaborative and interactive, and that her list would change in accordance with other recommendations from the SEC.  (PSMF ¶ 39; R-PSMF ¶ 39.)  Plaintiff further testified that she did not intend her written request as an all-or-nothing proposition.  (PSMF ¶ 40, as modified per R-PSMF ¶ 40; Solloway Dep. [115] 229:29-23.)[34]  She also testified that she sought "up to five days telework" only

_____

[34] Defendant disputes PSMF ¶ 40, which states that plaintiff's written request was not an all-or-nothing proposition, as unsupported by the record citation because the citation does not indicate that she was willing to accept less than the full list of accommodations she requested.  (R-PSMF ¶ 40.)  Defendant contends that, per plaintiff's counsel, all of plaintiff's requests "indicated that a five day or full-time telework was a major component of an acceptable accommodation."  (Id. (quoting Pl. Ex. 17 [113-17], at 3).)  Defendant further contends that to the extent plaintiff indicated any willingness to accept less than full-time telework, it was conditioned on the requirement that the SEC guarantee she would never see ARO Employee in the office.  (See R-PSMF ¶ 40, citing Dignam Dep. [117] 86:12-19 (her "communications made clear that [] even the thought—the possibility [that ARO Employee] might be [in the office when she was] was what caused her the distress . . . she couldn't tolerate that possibility.").)  Defendant finally contends that the medical information plaintiff submitted

20

because she was initially unsure, given the pornography allegations, whether ARO Employee would qualify for telework.  (PSMF ¶ 41; Solloway Dep. [115] 124-125.)[35]  Plaintiff also stated that her request could "be achieved by utilizing telework schedules for both of us (or 5 day a week telework for me alone)." (PSMF ¶ 42, as modified per R-PSMF ¶ 42; Solloway Dep. Ex. 9 [115-4].)[36]  Ms.

---

indicated that nothing less than full-time telework, and/or a guarantee that she would never encounter ARO Employee in or around the workplace, would satisfy her requests.  The Court modifies the proposed fact to reflect plaintiff's record citation, which indicates her intent.  (See Solloway Dep. [115] 229:20-23 ("Q. When you proposed the reasonable accommodations listed here, was it an all-or-nothing proposition for you?  A. No.").)

[35] Defendant disputes PSMF ¶ 41 as unsupported by the record cited.  (R-PSMF ¶ 41.)  The Court overrules defendant's objection because PSMF ¶ 41 is supported by the record.  (See Solloway Dep. [115] 124:9-13; 125:1-3 ("[P]art of the initial question was whether or not he could telework because there was something . . . in the telework act where, you know, if you admit to [surfing] pornography that you were excluded . . . which I think is the reason why the alternative was up to five days telework.").)

[36] Defendant disputes PSMF ¶ 42's contention that Ms. Solloway made clear that she would accept less than full-time telework.  (R-PSMF ¶ 42.) Defendant cites to Exhibit 9 to plaintiff's deposition, particularly plaintiff's statements therein that she must be guaranteed "the ability to be able to avoid [ARO Employee] totally," "the ability to totally avoid [ARO Employee] and my fears that he may be in attendance at something which I have to attend," as well as her request that she be assigned to registrant examinations she could perform remotely or fly into, or be driven by a co-worker.  (See R-PSMF ¶ 42 (citing Solloway Dep. Ex. 9 [115-4]).)  The Court modifies PSMF ¶ 42 to reflect the document cited, which speaks for itself.

21

Dignam testified that she viewed this first written accommodation request as an all-or-nothing request.  (PSMF ¶ 43, as modified per R-PSMF ¶ 43; Dignam Dep. [117] 87-88.)[37]

### K.      Mr. Dennis Denies Ad Hoc Telework Requests

Shortly after plaintiff submitted her request for an accommodation, Mr. Dennis began denying her ad hoc requests for telework.  (PSMF 44; R-PSMF ¶ 44.)[38]  Although Mr. Dennis claimed that it was important that Ms. Solloway come into the office and denied her requests to telework, he allowed her to use personal leave time to cover her absences.  (PSMF ¶ 45; R-PSMF ¶ 45.)  On June 20, 2011, Ms. Dignam expressed concern that Mr. Dennis and Mr. Foy were asking Ms. Solloway to come to the office without knowing about her request for accommodation.  (PSMF ¶ 46, as modified per R-PSMF ¶ 46; Pl. Ex. 6 [113-

―――――――――――――――

[37] Defendant disputes PSMF ¶ 43, which states that at least one SEC official viewed plaintiff's accommodation request as an all-or-nothing proposal, as unsupported by the record citation.  (See R-PSMF ¶ 43.)  Ms. Dignam testified as follows:  "Q. Isn't it true that her requested accommodation was viewed as an all or nothing accommodation?  A. I only know that's how I viewed it.  I don't know whether others viewed it that way."  (Dignam Dep. [117] 87:25-88:1-4.)  Accordingly, the Court modifies plaintiff's proposed fact to reflect the record.

[38] Defendant does not dispute PSMF ¶¶ 44-45, but contends that these facts are immaterial because any claim based on Mr. Dennis's actions is time-barred.  (R-PSMF ¶¶ 44-45.)   The Court includes PSMF ¶¶ 44-45 for background purposes.

6].)[39]  That same day, Ms. Solloway requested that Mr. Dennis and Mr. Foy be notified about the request for accommodation.  (PSMF ¶ 47; R-PSMF ¶ 47.)

Although Mr. Foy did not have responsibility or authority for deciding plaintiff's request for accommodations, he stated that he did not plan to approve full-time telework.  (PSMF ¶ 48, cl. 1; R-PSMF ¶ 48; PSMF ¶ 60, as modified per R-PSMF ¶ 60; Foy Dep. [116] 134:1-6; Pl. Ex. 7 [113-7].)[40]  Mr. Foy additionally testified that people can telework full-time, come into the office for meetings, and still perform their jobs, but that he interpreted Ms. Solloway's request as a request to never come into the ARO:

———————————————

[39] Defendant disputes PSMF ¶ 46, stating that Ms. Dignam expressed concern that Ms. Solloway was being asked to come to the office when she had requested an accommodation, as unsupported by the record citation.  (R-PSMF ¶ 46.)  Defendant contends that what Ms. Dignam actually expressed in the cited email was concern that Mr. Dennis and Mr. Foy were being asked to respond to plaintiff's telework requests without knowledge of her accommodation request.  (Id.)  Defendant is correct.  (See Pl. Ex. 6 ("I am concerned that Howard [Dennis] may be asking Carole to come to work without knowing about her request for accommodations and Askari [Foy] may be in the same position.").)  The Court modifies plaintiff's proposed fact to reflect the record.

[40] Defendant disputes the portion of PSMF ¶ 60 stating that Mr. Foy "justified" the SEC's position regarding five-day telework.  (R-PSMF ¶ 60.)  The record supports defendant's contention, so the Court modifies the proposed fact.  (See Foy Dep. [116] 134:4-6 ("[T]hat was not my responsibility to make a decision as it relates to disability. That was not in my authority.").)  The Court addressed defendant's other contentions regarding PSMF ¶ 60 supra note 19.

Q. I think what you're saying is not compatible with work is someone who stays home five days a week and never comes to the office for meetings or anything else, right?

A. That's correct.

Q. That could be a problem?

A. That creates challenges.

Q. Challenges?

A. (Witness nods head affirmatively.)

Q. Ms. Solloway did not request as an accommodation that she stay home and never come to work, did she?

A. Based on my understanding, that was part of her request. . . .

Q. All right. You're telling me now that her real request was never to come to the office?

A. That's based on my understanding.

(PSMF ¶ 48, cl. 2, as modified per R-PSMF ¶ 48; Foy Dep. [116] 73:5-18, 74:9-

12.) [41]    Additionally, Mr. Dennis began delaying his consideration of Ms.

_____

[41] Defendant disputes PSMF ¶ 48's statement that Mr. Foy testified that people can telework five days a week, come to the office for meetings and still do their jobs, and that the CBA permitted five days of weekly telework.  (R-PSMF ¶ 48.)  The Court addressed defendant's contentions with what the CBA allowed supra Part I.D. and the relevance of Mr. Foy's comments given his lack of authority supra note 40.  Defendant also contends that the record citation does not support the proposed fact because Mr. Foy's statement was taken out of context. The Court includes Mr. Foy's testimony, which speaks for itself.

24

Solloway's ad hoc telework requests until after she had teleworked, forcing her to instead use accrued personal leave even though she had already worked the day from home.  (PSMF ¶ 49; R-PSMF ¶ 49.)[42]

## L.     DPO Requests Additional Medical Documentation

On June 22, 2011, DPO emailed plaintiff and requested that she provide additional medical documentation for her reasonable accommodation request because the only documentation she had submitted was the FMLA form requesting leave through July 5, 2011, which did not address telework or any of the specifics included in her request for accommodation.  (DSMF ¶ 20; Solloway Dep. 80:11-14, Ex. 2 [110-5].)[43]  The DPO advised plaintiff that additional

---

[42] Defendant does not dispute PSMF ¶ 49, but contends that it is immaterial because any claim based on Mr. Dennis's actions is time-barred.  (R-PSMF ¶ 49.) The Court includes PSMF ¶ 49 for background purposes.

[43] Plaintiff disputes DSMF ¶ 20 because she contends that whether the FMLA leave request form was "incomplete" is a question of fact.  (R-DSMF ¶ 20.)  Plaintiff further contends that the fact that her initial FMLA form did not include reference to telework is immaterial because "[t]here is no requirement that Plaintiff identify the exact accommodation needed or any accommodation at all."  (Id.)  Defendant's record citation shows that DPO emailed Ms. Solloway on June 22, 2011 requesting additional documentation.  (See Solloway Dep. Ex. 2 [110-5].)  Accordingly, the Court will not consider plaintiff's argumentative response, particularly given that DSMF ¶ 20 does not state that plaintiff's FMLA leave request was "incomplete."

documentation must address her prognosis and provide a medical basis for her requested accommodations.  (DSMF ¶ 21; R-DSMF ¶ 21.)

Also on June 22, OHR approved plaintiff's FMLA leave, and plaintiff went on leave beginning June 27, 2011.  (DSMF ¶¶ 17-18; R-DSMF ¶¶ 17-18.) [44] Plaintiff submitted an updated FMLA form signed by Dr. Vaughn on June 28, 2011.  (DSMF ¶ 22, as modified per R-DSMF ¶ 22.)[45]  This form altered her incapacitation date from July 5, 2011 to "indefinite," explained that plaintiff is "like a deer in headlights [at the] possibility of contact with [ARO Employee]," and listed symptoms including poor concentration, crying spells, nightmares, insomnia or sleep disturbance, hypervigilance, rapid heartbeat, sweaty palms, stomach problems, and shaking hands.  (Pl.'s Ex. 16 [110-16].)  The form also

---

[44] Plaintiff does not dispute DSMF ¶¶ 17-18 but contends those facts are immaterial.  (See R-DSMF ¶¶ 17-18.)  The Court includes the proposed facts for background purposes.

[45] Plaintiff disputes DSMF ¶ 22, which states that other than altering her incapacitation date from July 5, 2011 to "indefinite," the form "otherwise did not provide any further explanation or medical support" for her accommodation requests.  (See R-DSMF ¶ 22.)  Plaintiff contends that the updated form stated that plaintiff was disabled and as a result of her disability suffered, inter alia, issues with sleep and concentration, and that although flare-ups would require her to be absent from work, she was capable of working from home.  (Id.)  The Court has reviewed the updated form and agrees with plaintiff that it contains this additional information. Accordingly, the Court modifies DSMF ¶ 22 to include a summary of the contents of the form in the text following this note.

stated that although the flare-ups of plaintiff's condition would require her to be absent from work, she was still capable of working from home.  (Id.)

On July 21, 2011, DPO advised plaintiff that this medical documentation was insufficient to support her request for reasonable accommodation, and requested that plaintiff submit a medical release to allow a Federal Occupational Health Services ("FOH") physician, Dr. Neal Presant, to contact Dr. Vaughn. (DSMF ¶ 23; R-DSMF ¶ 23.)[46]  On July 26, 2011, plaintiff submitted a signed medical release to DPO.  (DSMF ¶ 24, R-DSMF ¶ 24.)  DPO submitted a request for a medical assessment along with that release to FOH on August 2, 2011. (DSMF ¶ 25; R-DSMF ¶ 25.)

On August 18, 2011, ARO management offered to move plaintiff's office further away from ARO Employee.  (DSMF ¶ 26; R- DSMF ¶ 26.)  On August 19, 2011, Dr. Presant faxed Dr. Vaughn a list of questions regarding plaintiff's accommodation request.  (Solloway Aff. [110-4] 370-71.)  On August 23, 2011, Dr. Presant advised DPO that he could not reach Dr. Vaughn despite several

---

[46] Plaintiff disputes the "characterization" of her medical release as incomplete.  (R-DSMF ¶ 23.) The Court overrules this objection as argumentative.

27

additional attempts to contact him.[47]  (DSMF ¶ 27; R-DSMF ¶ 27.)  DPO advised

plaintiff of Dr. Presant's ongoing inability to reach Dr. Vaughn that day and again

on August 25, 2011.  (DSMF ¶ 28; R-DSMF ¶ 28.)  Dr. Vaughn responded to Dr.

Presant's August 19 fax on August 29, 2011.  (DSMF ¶ 29, as modified per R-

DSMF ¶ 29; Solloway Aff. [113-14] 370-71.)[48]  Dr. Presant submitted two

medical assessments to the DPO, dated September 2 and 12, 2011, advising that,

---

[47] The parties dispute whether Dr. Vaughn ignored requests from Dr. Presant.  Defendant contends that Dr. Presant reached out several times with no response, and plaintiff contends that Dr. Vaughn did not recall the SEC ever reaching out to him.  (See DSMF ¶¶ 41-42; R-DSMF ¶¶ 41-42.)  Even reading the facts in the light most favorable to plaintiff, her contention, while supported by the record, fails to refute defendant's proposed fact.  (See Solloway Aff. [113-14] 106 ("Dr. Vaughn did not respond to two phone calls and faxed questions requesting responses."); Vaughn Dep. [119] 118:25-119:2 ("Q. Do you remember any attempts to contact you?  That the SEC ever attempted to contact you?  A. Not specifically.").)  However, because the information Dr. Presant had before him, from Dr. Vaughn or otherwise, while making his assessment is undisputed (see infra Part I.N) the Court finds this to be an immaterial dispute, and excludes DSMF ¶¶ 41-42.  The Court gathers the facts listing the evidence on which Dr. Presant relied, and when and how he received it, from the record.  (See Solloway Dep. Ex. 6 [115-3].)

[48] Plaintiff disputes DSMF ¶ 29's statement that Dr. Vaughn "finally" responded to Dr. Presant, because she contends that he responded within seven days.  (R-DSMF ¶ 29.)  The Court modifies DSMF ¶ 29 to reflect the record, which shows he responded within ten days.  (See Solloway Aff. [110-4] 370-71.)  The Court does not consider plaintiff's argumentative statement (that Dr. Presant "never indicated to Dr. Vaughn that the information he provided was inadequate") in the remainder of R-DSMF ¶ 29.

based on the medical evidence he had gathered, plaintiff was unable to work in the ARO as long as ARO Employee was also there.  (DSMF ¶ 30; R-DSMF ¶ 30.)

On September 27, 2011, at Ms. Solloway's request, ARO and DPO management held a conference with plaintiff and her attorney and told them that, per DPO's prior correspondence with plaintiff, her medical documentation was deficient.  (DSMF ¶ 31; R-DSMF ¶ 31.)  On September 30, DPO requested that plaintiff submit any additional medical documentation by October 6, 2011. (DSMF ¶ 39; R-DSMF ¶ 39.)

### M.    Plaintiff's 2011 Temporary Accommodation

Also on October 6, 2011, DPO offered Ms. Solloway a temporary accommodation under which she would telework five days of every two-week period and ARO Employee would telework on the opposite five days, which would prevent plaintiff and ARO Employee from working from the office on the same day.  (DSMF ¶ 32; R-DSMF ¶ 32; PSMF ¶ 50; R-PSMF ¶ 50.)  According to this schedule, Ms. Solloway worked from home Wednesday, Thursday, and Friday during the first week of the pay period, and Wednesday and Thursday during the second week of the period; the schedule was later modified at Ms. Solloway's request so that she would always have Friday as a recurring telework day.  (PSMF ¶ 51, as modified per R-PSMF ¶ 51; Solloway Dep. [115] 179:24-

29

180:7.) [49] Plaintiff's temporary accommodation was formally in effect until December 12, 2011. (DSMF ¶ 35; R-DSMF ¶ 35.)[50]

The temporary accommodation allowed Ms. Solloway to perform her job. (PSMF ¶ 83; R-PSMF ¶ 83.)[51] She could perform the essential functions of her position, and her evaluations for the corresponding period show that her examination work was meeting her critical elements and performance standards. (DSMF ¶ 33; R-DSMF ¶ 33.) Plaintiff testified that the temporary accommodation "was successful" in meeting her needs, i.e., to avoid ARO Employee. (DSMF ¶ 36; Solloway Dep. [115] 123:15-17.)[52] Dr. Vaughn

--------------------

[49] Defendant contends that the SEC later changed the schedule at Ms. Solloway's request so that she would always have Friday as a telework day. (R-PSMF ¶ 51.) The record supports defendant's contention. (See Solloway Dep. [115] 179:24-180:7.) The Court modifies PSMF ¶ 51 accordingly.

[50] Plaintiff does not dispute DSMF ¶ 35, but states without citation that "there is divergent testimony on this point." (R-DSMF ¶ 35.) The Court accepts plaintiff's admission and does not include the remainder of R-DSMF ¶ 35.

[51] Defendant does not dispute that the temporary accommodation allowed Ms. Solloway to perform her job, but contends that plaintiff never requested that the SEC reinstate the temporary accommodation after it denied her requests. (R-PSMF ¶ 83.) The Court accepts defendant's admission and does not consider the remainder of defendant's argumentative statements in R-PSMF ¶ 83.

[52] Plaintiff does not deny that the temporary accommodation was successful, but disputes that it met her needs "to the extent this implies something other than Solloway's record of disability." (R-DSMF ¶ 36.) Ms. Solloway

concluded, in his notes from an October 2011 appointment, that plaintiff was presently "able to perform her job."  (DSMF ¶ 37; R-DSMF ¶ 37.)  Plaintiff also reported to LCSW Beauchain that the "alternate schedule" in the temporary accommodation "worked" for her.  (DSMF ¶ 38; R-DSMF ¶ 38.)   Moreover, Mr. Foy testified that the temporary accommodation did not cause undue hardship for the SEC because it was consistent with the CBA.  (PSMF ¶¶ 52[53]-53; R-PSMF ¶ 53.)[54]

---

testified that the temporary accommodation met her needs.  (See Solloway Dep. [115] 123:15-17 ("Q. And the temporary [accommodation] was successful to meet the needs you were trying to meet? A. Yes.")   Accordingly, the Court accepts plaintiff's admission and does not include the remaining statements in R-DSMF ¶ 36.

[53] Defendant disputes PSMF ¶ 52's contention that the temporary accommodation did not impose a hardship for the SEC, because it was later found unduly burdensome.  (R-PSMF ¶ 52.)  The Court modifies plaintiff's proposed fact per her record citation, which shows that Mr. Foy testified that it did not create an undue hardship at the time because it was consistent with the CBA. (See Foy Dep. [116] 44:7-8 (noting that the accommodation did not create an undue hardship "because it was consistent with the CBA, two days recurring, one day ad hoc.").)

[54] Defendant does not dispute PSMF ¶ 53, but states that Mr. Foy did not have responsibility for deciding accommodation requests.  (R-PSMF ¶ 53.)  The Court accepts defendant's admission and does not include the remaining statements in R-PSMF ¶ 53.

31

**N.     The SEC Denies Plaintiff's 2011 Request for Accommodation**

Plaintiff submitted additional medical documentation from Dr. Vaughn and LCSW Beauchain on October 12, 2011.  (DSMF ¶ 40; R-DSMF ¶ 40.)[55]  On December 16, 2011, based on Dr. Vaughn's May and June 2011 FMLA leave request forms and attachments, Dr. Presant's September 2011 assessments and the additional documentation from Dr. Vaughn provided on October 12, 2011, the SEC denied plaintiff's accommodation request.  (DSMF ¶ 43; R-DSMF ¶ 43; PSMF ¶ 54; R-PSMF ¶ 54[56]; Solloway Dep. Ex. 6 [115-3].)  In the letter notifying her of its decision, the SEC explained that there was insufficient evidence to determine that plaintiff was disabled under the RHA because her medical documentation failed to demonstrate that her PTSD substantially limited her from performing any major life activity, and that her accommodation request

---

[55] Plaintiff does not dispute DSMF ¶ 40 except for defendant's use of the word "finally."  (R-DSMF ¶ 40.)  The Court strikes the conclusory adverb.

[56] Defendant does not dispute PSMF ¶ 54, but states that the length of time between the request and the response was due to plaintiff's failure timely to submit information and that plaintiff was accommodated in the interim.  (R-PSMF ¶ 54.)  The Court accepts defendant's admission and does not include the remaining statements in R-PSMF ¶ 54.

presented an undue hardship.[57]  (DSMF ¶ 43(a); PSMF ¶ 56, as modified per R-PSMF ¶ 56.)[58]

Specifically, the letter stated that the only manifestation of Ms. Solloway's PTSD supported by the medical documentation appeared to be her inability to work in the same building as ARO Employee.  (DSMF ¶ 43(b).)[59]  The letter also stated that the SEC's repeated efforts to obtain additional information concerning the nature and extent of plaintiff's impairment had been unsuccessful because Dr. Vaughn did not return Dr. Presant's request for a telephone call.  (Id. ¶ 43(c).) The letter also explained that even assuming that plaintiff was disabled under the RHA, the accommodations that she requested were not reasonable and would

_____

[57] Plaintiff disputes DSMF ¶ 43 to the extent it "purports to incorporate as true each of the stated reasons."  (R-DSMF ¶ 43.)  Defendant's record citation shows that the SEC provided each of the reasons listed in DSMF ¶ 43 to plaintiff in the December 16, 2011 letter.  Accordingly, the Court will not consider plaintiff's argumentative objections to the merits of those reasons.

[58] Defendant contends that PSMF ¶ 56's statement that the SEC determined that her request for full-time telework presented an undue hardship is inaccurate because she sought more than permanent full-time telework.  (R-PSMF ¶ 56.) Because the accommodation request sought accommodations in addition to full-time telework, the Court modifies the proposed fact.  (See Pl.'s Ex. 16 [113-16].)

[59] The Court omits the portion of DSMF ¶ 43(b) stating that the inability to work with one coworker, or in one location, does not constitute a disability under the RHA as an improper legal conclusion.

pose an undue hardship on the SEC because the SEC could not control the whereabouts of ARO Employee nor could the SEC guarantee that plaintiff would never come in contact with ARO Employee.  (Id. ¶ 43(d).)  Finally, the letter stated that the temporary accommodation posed an undue hardship on the SEC because the SEC had to arrange for ARO Employee to travel to attend mandatory training in a different SEC regional office (located in a different state) so that he and plaintiff did not attend the same training, and because collaboration with plaintiff's peers was necessary and essential to accomplish her work.  (Id. ¶ 43(e).)   The letter did not mention lack of technology or that the request violated the terms of the CBA.  (PSMF ¶ 58.)[60]

Plaintiff did not appeal or request reconsideration of the December 16, 2011 denial, and did not file a NTEU grievance.  (DSMF ¶ 44.)[61]  Plaintiff did, however, file an Equal Employment Opportunity ("EEO") complaint with the SEC on February 16, 2012.  (PSMF ¶ 65, as modified per R-PSMF ¶ 65; Pl. Ex. 3

_____

[60] Defendant disputes PSMF ¶ 58, contending that its later May 2013 denial explained both of these things.  (R-PSMF ¶ 58.)  The Court overrules defendant's objection because its argument about and citation to the 2013 denial is not relevant to the 2011 denial.

[61] Plaintiff objects to DSMF ¶ 44 as immaterial because no exhaustion requirement applied to her internal request for accommodation.  (R-DSMF ¶ 44.) The Court overrules her objection as argumentative.

34

[113-3].)[62]   Plaintiff testified that although she had expected a "collaborative interactive process," "where people would recommend things and make changes [to her request]," "no one ever recommended any alternatives." (PSMF ¶ 55, as modified per R-PSMF ¶ 55; Solloway Dep. [115] 211:21-25-212: 1.)[63]   Ms. Dignam testified that she was unsure if the SEC considered maintaining plaintiff's temporary accommodation as permanent. (PSMF ¶ 55, as modified per R-PSMF ¶ 55; Dignam Dep. [117] 120.)[64]   Plaintiff testified that had she been

---

[62] Defendant disputes, without citation, PSMF ¶ 65's contention that Ms. Solloway initiated the EEO process "[i]n response to the rejection of any accommodations." (See R-PSMF ¶ 65.) Plaintiff's record citation does not support her statement (See Solloway Dep. [115] 182 (containing plaintiff's testimony that while in informal EEO counseling, she believed that just because an initial accommodation request was denied did not mean she did not need an accommodation).) The Court omits the disputed portion of PSMF ¶ 65 and modifies the proposed fact to reflect the EEO Complaint in the record, which was filed on February 16, 2012. (See Solloway Dep. Ex. 3 [115-2], at 5.)

[63] Defendant disputes PSMF ¶ 55's contention that the SEC denied plaintiff's request without engaging in an interactive process. (R-PSMF ¶ 55.) Defendant contends that the SEC engaged in the interactive process for months. (Id.) Whether the parties engaged in an interactive process is a legal issue to be determined in the instant case. Accordingly, the Court modifies the proposed fact to reflect plaintiff's citation to her deposition, which indicates her opinion, and to that of Ms. Dignam, which reflects that Ms. Dignam's testimony as described in the text following this note.

[64] The Court excludes PSMF ¶ 57, stating that the finding of undue hardship was tied to plaintiff's complete absence from the ARO, because the only record citation plaintiff offers in support of this contention comes from the SEC's

provided an alternative proposal, she would have considered it.  (PSMF ¶ 61, as modified per R-PSMF ¶ 61.)[65]  She also identified the goal of being "able to telework days [ARO Employee was] in office" to LCSW Beauchain at the time. (PSMF ¶ 62, as modified per R-PSMF ¶ 62; Beauchain Dep. [118] 78.)[66]

### O.    The SEC Accommodates Ms. Solloway After the 2011 Denial

Although the SEC denied Ms. Solloway's request for permanent full-time telework, the SEC permitted her to continue teleworking at least two days of

---

letter denying her second reasonable accommodation request in 2013, so it is not relevant to the 2011 denial.

[65] Defendant disputes PSMF ¶ 61, which states that plaintiff would have considered an alternative proposal had she been provided one, as unsupported by the record citation.  (R-PSMF ¶ 61.)  Defendant argues that the record citation does not indicate that she was ever willing to accept less than the full list of accommodations she was requesting.  (Id. (quoting Pl. Ex. 17 [113-17] 3).)  The Court modifies the proposed fact to reflect plaintiff's record citation, which indicates her intent.  (See Solloway Dep. [115] 231:8-10 ("Q. And if the SEC had come back to you with an alternative proposal, would you have considered it? A. Yes, absolutely.").)  Defendant further contends that plaintiff did not seek continuation of the temporary accommodation and also refused the SEC's offer of reassignment.  The Court does not consider these argumentative statements, which are unsupported by a record citation.

[66] Defendant disputes PSMF ¶ 62, which states that all Ms. Solloway wanted was to be able to telework on the days that ARO Employee would be in the office, by repeating its argument that she was never willing to accept less than the full list of requested accommodations. (R-PSMF ¶ 62.)  The Court modifies the proposed fact to reflect plaintiff's record citation, which cites LCSW Beauchain's notes recording their conversation.  (See Beauchain Dep. [118] 78.)

36

every week (on her preferred days, Thursday and Friday.)  (DSMF ¶ 45, sent.

1.)[67]   The SEC also kept ARO Employee on a recurring two-day-per-week

telework schedule on opposite days (Monday and Tuesday).  (DSMF ¶ 45, sent.

2.)  Plaintiff told LCSW Beauchain that she was worried about the Wednesday

schedule.  (PSMF ¶ 63, as modified per R-PSMF ¶ 63; Beauchain Dep. [118]

60:19-22.)[68]  However, the SEC allowed plaintiff to telework additional days (at

times up to five days per week) on an ad hoc basis.  (DSMF ¶ 45, sent. 3.)[69]

_____

[67] Plaintiff does not dispute that she retained her two-day recurring schedule, but argues that two-day telework was available to all employees and was not an accommodation.  (R-DSMF ¶ 45.)   The Court will not consider plaintiff's argumentative response.

[68] Defendant disputes PSMF ¶ 63, which states that following the denial of her 2011 request, defendant terminated the temporary accommodation and revoked her ad hoc telework day, meaning both Ms. Solloway and ARO Employee would be in the ARO on Wednesdays, as unsupported by the record citation.  (R-PSMF ¶ 63.)  The citation shows only that plaintiff was concerned about Wednesdays.  (See Beauchain Dep. [118] 60:19-24 ("Q.  And then she goes into her new schedule where she has Thursday and Friday telework.  [ARO Employee] is Monday, Tuesday, and she's worried about Wednesday's schedule is what it looks like.  A.  Uh-huh.  That they would wind up in the same meetings.").)  Accordingly, the Court modifies the proposed fact to reflect the record cited.  The Court does not consider the remainder of defendant's argumentative statements in R-PSMF ¶ 63.

[69] The Court excludes PSMF ¶ 64, which states that plaintiff's temporary accommodation was discontinued in spite of ARO's normal policy that allowed two-day recurring telework with an opportunity to work ad hoc a third day, as argumentative and repetitive.  The Court addressed ARO's telework policy supra

Independent of their telework schedules, both plaintiff and ARO Employee were also periodically out of the office to perform examinations. (Id. ¶ 45, sent. 4.) Also, when the SEC relocated to a new office building in 2011, it took into account plaintiff's desire to avoid ARO Employee by putting their offices on separate floors. (Id. ¶ 46.)[70]  Plaintiff was able to avoid seeing ARO Employee for two years between May 2011 and March 2013. (Id. ¶¶ 47-48, as modified per R-DSMF ¶¶ 47-48.)[71]

Plaintiff was able to "perform normal work activities" while teleworking. (DSMF ¶ 49; R-DSMF ¶ 49.)  Ms. Solloway stated as follows:

_____

Part I.D.

[70] Plaintiff asserts that DSMF ¶ 46 is immaterial "because Defendant denied Plaintiff's request for a reasonable accommodation in its entirety." (R-DSMF ¶ 46.)  The Court overrules the objection as argumentative.

[71] Plaintiff admits that she did not see ARO Employee from May 2011 to May 2013, but contends it was through her own efforts, not due to an accommodation. (R-DSMF ¶¶ 47-48.)  She further disputes DSMF ¶ 48, contending that whether she saw ARO Employee is immaterial because the SEC did not provide her with an accommodation. (R-DSMF ¶ 48.)  The Court modifies DSMF ¶ 47 to remove the reference to an accommodation, because it is undisputed that no formal accommodation was in place at that time.  The Court also modifies DSMF ¶ 47 to reflect both parties' record citations showing that plaintiff did not see ARO Employee for two years beginning in May, rather than March, of 2011. (See Beauchain Dep. [118] 78.)  The Court overrules plaintiff's remaining argumentative objection to DSMF ¶ 48.

> Although I experience severe symptoms when in the physical presence of [ARO Employee], I am not without the ability to perform normal work activities. Since . . . I first explained my disability to management in June 2011, I have not sought, or been given, a different type of examination schedule than that which I always had. I have not had cases transferred from my schedule due to my medical conditions.

(DSMF ¶ 49(a); R-DSMF ¶ 49(a).) Plaintiff also noted that "I have accommodated myself (since the SEC denied my request for accommodation 12/1/6/11) . . . and that her condition has "little impact on me performing the duties of my position unless I encounter one of the triggers to my PTSD," with ARO Employee being a "work related" trigger. (DSMF ¶¶ 49 (b)-(c); R-DSMF ¶¶ 49(b)-(c).) Dr. Vaughn and LCSW Beauchain concurred that the only manifestation of plaintiff's PTSD, anxiety, and depression occurred in physical proximity of ARO Employee, and that Ms. Solloway is able to work if she avoid the possibility of coming into contact with him by working from home. (DSMF ¶ 50, as modified per R-DSMF ¶ 50.)[72] Dr. Vaughn also testified that at least

---

[72] Plaintiff disputes DSMF ¶ 50 because she contends that her disability is not the presence of ARO Employee, but rather the PTSD, depression, and anxiety triggered by him. (R-DSMF ¶ 50.) Whether and how plaintiff is disabled is a legal issue to be decided in this case. Thus, the undersigned modifies the proposed fact to reflect that it describes her diagnosis.

through September 2013, plaintiff "had been able to work," including, at times, in the office.  (DSMF ¶ 51; R-DSMF ¶ 51.)

### P.      Plaintiff's Performance Appraisals for Fiscal Years 2011-2012

The fiscal year 2011 rating period ended on September 30, 2011.  (DSMF ¶ 52; R-DSMF ¶ 52.)  Plaintiff received a rating of "acceptable," and a numerical rating of 3.0 out of 5.0, for fiscal year 2011 on December 5, 2011.  (DSMF ¶ 53, sent. 1; R-DSMF ¶ 53; PSMF ¶ 73; R-PSMF ¶ 73.)  The fiscal year 2012 rating period ended on September 30, 2012.  (DSMF ¶ 54; R-DSMF ¶ 54.)  Plaintiff received a rating of "acceptable," and a numerical rating of 3.0 out of 5.0, for fiscal year 2012 on January 8, 2013.  (DSMF ¶ 55; R-DSMF ¶ 55; PSMF ¶ 73; R-PSMF ¶ 73.)

Plaintiff's numerical rating of 3.0 is considered a "good rating," that means that plaintiff "met, and perhaps in some areas, exceeded," the high expectations set by the SEC."  (DSMF ¶ 56; R-DSMF ¶ 56.)  However, her numerical ratings were not the ratings of record, as the SEC is contractually prohibited from using the numerical ratings for any purpose because Ms. Solloway is a member of the NTEU.  (DSMF ¶¶ 57, 58, sent. 1; R-DSMF ¶¶ 57-58.)  Pursuant to the CBA with the NTEU, the SEC judges NTEU employees such as plaintiff only as "acceptable"

40

or "unacceptable," with a 2.0 or higher (out of a maximum of 5.0) deemed acceptable.  (DSMF ¶ 58, sent. 2; R-DSMF ¶ 58.)

Because Ms. Solloway was rated "acceptable" in fiscal years 2011 and 2012, she received the same merit salary increase as any other employee who was given an acceptable rating and did not lose any employment benefits.  (DSMF ¶¶ 59, 61; R-DSMF ¶¶ 59, 61.)  Although plaintiff's 2011 and 2012 ratings of 3.0 were lower than her numerical score of 3.8 for 2010, because she was rated only on a binary "acceptable" or "unacceptable" basis, these ratings were not substantially lower than her prior ratings.  (DSMF ¶ 60, as modified per R-DSMF ¶ 60; Solloway Dep. [115] 179; Russell Aff. [11] 5-9; Foy Aff. [10] 5.)[73]  To the extent plaintiff's fiscal years 2011 and 2012 evaluations indicated that she "needed improvement" in certain areas, her reviewers stated that was due to "the need for [her] to be more efficient and productive" and her "on-going pattern of missed meetings and trainings."  (DSMF ¶ 62, sent. 1.)  This feedback was

_____

[73] Plaintiff does not dispute that her ratings for fiscal years 2011 and 2012 were "acceptable" but contends that her actual scores were substantially lower than the 3.8 she earned for fiscal year 2010.  (R-DSMF ¶ 60.)  Because plaintiff's record citations show that she received a 3.8 for fiscal year 2010, which was higher than the 3.0 she received the following two years, the Court modifies the proposed fact to better reflect the record.  (See Solloway Dep. [115] 179.)

41

provided to Ms. Solloway multiple times throughout the performance period.  (Id.

¶ 62, sent. 2.)[74]  For example, at Ms. Solloway's request, on September 4, 2012,

her immediate supervisor, Anthony Russell,[75] provided plaintiff and Mr. Foy with

a list of meetings she had missed.  (Solloway Aff. [113-1] ¶¶ 13, 17; Pl. Ex. 15

[113-15].)

### Q.    Plaintiff's 2013 Accommodation Request

On March 28, 2013, Ms. Solloway emailed Mr. Russell and told him she

was seeking, as a reasonable accommodation, permission to phone into meetings

_____

[74] Plaintiff responds to DSMF ¶ 62 (sentence two) with her own version of events.  (R-DSMF ¶ 62.)  She states that Mr. Russell presented her with a list of meetings she had missed in October 2012, three months after she requested it, and did not mention those missed meetings in her mid-year review.  (Id. (citing Solloway Decl. [113-1] ¶¶ 11, 16).)  Mr. Russell averred that he conducted a planning meeting with Ms. Solloway for fiscal year 2012 on January 23, 2012, a mid-year meeting on May 1, 2012, and provided his final rating on January 29, 2013.  (Russell Aff. [110-11] 4.)  He stated that "[a] recurring theme in all of these meetings was the need for [Ms. Solloway] to be more efficient and productive."  (Id.)  He stated that he did not discuss missed meetings with plaintiff at the mid-year meeting because "[t]he on-going pattern of missed meetings and trainings became apparent to me later in FY 2012."  (Id. at 7.)  He explained that he "communicated my concerns regarding her missing meetings and trainings verbally.  I also communicated concerns to her in emails on July 31, 2012."  (Id.)  Because DSMF ¶ 62 accurately reflects the record cited, the Court overrules plaintiff's objection to it.

[75] Mr. Dennis retired on September 30, 2011, at which point Mr. Russell became plaintiff's direct supervisor.  (Solloway Dep. [115] 29.)

with Commissioners and other senior officials visiting the ARO from SEC headquarters the week of April 4, 2013.  (DSMF ¶ 64; R-DSMF ¶ 64.)  Thereafter, plaintiff renewed her earlier request for accommodations to DPO.  (DSMF ¶ 65; R-DSMF ¶ 65.)  The SEC granted Ms. Solloway a temporary accommodation of medical telework up to full time, with the ability to attend mandatory meetings by teleconference, while it conducted the interactive process.   (DSMF ¶ 66: R-DSMF ¶ 66.)

On April 8, 2013, Ms. Solloway emailed DPO and wrote that she needed the following accommodations, including accommodations not sought in her 2011 request:  "the ability to be able to avoid [ARO Employee] totally (whether I am in the ARO and/or another SEC office, or while I am conducting examination at Registrants' office)"; to be "[a]ssigned to either examinations that are in locations which I can fly into, to team examinations (in which I can ride with other member(s) of the team), and/or to examinations that can be performed virtually or remotely (via my computer/telephone) without going to the physical office location," and noting that she was "open to other suggestions, as long as it allows me the ability to totally avoid [ARO Employee], and my fears that he may

43

be in attendance at something which I have to attend."[76]  (DSMF ¶ 67 (a)-(c); R-DSMF ¶ 67 (a)-(c); PSMF ¶ 66; R-PSMF ¶ 66; PSMF ¶ 67, as modified per R-PSMF ¶ 67; PSMF ¶ 68, as modified per R-PSMF ¶ 68; Solloway Dep. Ex. 9 [115-4].) [77]  DPO again reviewed plaintiff's medical documentation and concluded that it was sufficient to find that plaintiff was an individual with a disability under the RHA.  (DSMF ¶ 68; R-DSMF ¶ 68; PSMF ¶ 70; R-PSMF ¶ 70.)  DPO then engaged in the interactive process with plaintiff's supervisors to determine the feasibility of her requested accommodations.  (DSMF ¶ 69.)[78]

Plaintiff asserted in interrogatory responses served on the SEC on May 9, 2013, that "[u]nless and until [her] psychological condition improves [she

---

[76] Defendant disputes PSMF ¶ 68, which states that Ms. Solloway stressed that she was open to other suggestions that would enable her to avoid ARO Employee, by repeating that the citation does not suggest she was ever willing to accept less than the full list of requested accommodations.  (R-PSMF ¶ 68.)  The Court summarizes the requests and statements made in Ms. Solloway's 2013 request in the text preceding this note, which speaks for itself.

[77] Defendant disputes PSMF ¶ 67 by stating that plaintiff also requested the ability to avoid ARO Employee totally and to be assigned to examinations she could fly into or perform remotely, or be driven by a co-worker.  (R-PSMF ¶ 67.)  Again, the Court summarizes Ms. Solloway's written accommodation request, which speaks for itself.

[78] The Court overrules plaintiff's materiality objection to DSMF ¶ 69.  (See R-DSMF ¶ 69.)

doesn't] think [she] can work in the same building as [ARO Employee]; [she] would have to know and believe there was no chance [their] paths would cross; [ARO Employee] would have to be forbidden to come to [her] office floor and [she] would never have to go to the floor on which he worked; and [e]ven then, a chance meeting in an elevator or parking lot would trigger [her] symptoms." (DMSF ¶ 70 (a)-(d); Def.'s Ex. 10 [110-13] ¶ 14.)[79]

### R.    Plaintiff's 2013 Accommodation Request is Denied

On May 24, 2013, DPO determined that Ms. Solloway's requested accommodation—to avoid ever being physically present on the premises of the ARO for any reason—would impose an undue hardship on the ARO.  (DSMF ¶ 75; R-DSMF ¶ 75; PSMF ¶ 71; R-PSMF ¶ 71.)[80]  Both Mr. Russell and Mr. Foy explained that the ARO would suffer undue hardship by granting plaintiff's

---

[79] Plaintiff objects to DSMF ¶ 70(a)-(d), which quotes answers plaintiff provided in interrogatory responses served on the SEC on May 9, 2013.  Because these answers reflect her (and her attorney's) position during the relevant time frame, the Court overrules the objection.

[80] Defendant does not dispute PSMF ¶ 71, which states that the SEC denied the 2013 request because it posed an undue hardship, but states that it offered plaintiff reassignment as an alterative accommodation.  (R-PSMF ¶ 71.)  The Court accepts defendant's admission and does not include the remaining statements in R-PSMF ¶ 71, particularly given that defendant admitted the nearly identical PSMF ¶ 75.

requested accommodations, which were essentially "a de facto restraining order" against ARO Employee.  (DSMF ¶ 71.)[81]  There were other issues that would cause an undue hardship to the ARO as well.  (Id. ¶ 72; Solloway Dep. 110:11-16, Exs. 13 [115-5], 15 [115-7]; Foy Dep. [116] 27:15-28:6)[82]

The ARO asserted that the degree of unpredictable unscheduled telework plaintiff requested would present a hardship to the operations of the office.  (DSMF ¶ 72(a).)  In order to perform the essential functions of her position, Ms. Solloway's physical presence in the office is required from time to time, and at unpredictable intervals, to meet with managers, co-examiners, and junior accountants in planning for and carrying out registrant examinations, including during the pre-examination planning stage, during the examinations, and during

---

[81] Plaintiff does not dispute that the reason stated in DSMF ¶ 71 was part of the SEC's explanation, but contends it is immaterial.  (R-DSMF ¶ 71.)  Because the SEC's reasoning for denying accommodations is relevant to this case, the Court overrules plaintiff's objection.  The Court does not consider the remainder of plaintiff's argumentative response, which asserts that the record "shows no effort by the SEC to offer any alternative accommodations."

[82] Plaintiff objects to DSMF ¶ 72 because it is not supported by citations to the record.  (R-DSMF ¶ 72.)  The citations provided at the end of DSMF ¶ 72 are sufficient to support each sub-section, so the Court overrules the objection and does not consider the remainder of plaintiff's argumentative response that these reasons were only applicable because the SEC did not consider offering an accommodation that did not exactly meet her request.

kick-off, debriefing, and exit interviews, which normally occur within the ARO with all examiners present.  (DSMF ¶¶ 72(b)-(d).)   Additional essential job functions include plaintiff's required attendance at quarterly, mid-year, and year-end meetings conducted in person with the entire ARO Examination staff, and monthly and other meetings with the entire Office of Compliance Inspection and Examination staff in the ARO.  (Id. ¶¶ 72(g)-(h).)

On occasion, Ms. Solloway is also required to be physically present in the office to access the Bloomberg terminal for research.  (DSMF ¶ 72(e).)  Plaintiff is also required to attend interactive, in-person training.  (Id. ¶ 72(i).)  While attendance at any particular meeting or training may be excused, and a dial-in option is generally available, no ARO staff member may miss all or most of these activities or exclusively participate by telephone because the job description requires active participation in such events, and the telephone does not lend itself to active participation.  (Id. ¶ 72(j)-(l).)  In fact, since plaintiff was granted a temporary accommodation in April 2013, the ARO had no recollection of her active participation in any all-hands meeting, including asking a question or making a comment.  (Id. ¶ 72(m).)  Moreover, the ARO could not guarantee that Ms. Solloway would never have contact with ARO Employee because of

mandatory events and meetings that even teleworking employees must attend in person.  (Id. ¶ 72(a), (n); PSMF ¶ 72; R-PSMF ¶ 72.)[83]

As to plaintiff's requests to be restricted to examinations at locations to which she could fly or drive with other team members, or that she could conduct remotely, this would unduly restrict ARO's ability to assign plaintiff to examinations.  (DSMF ¶ 72(o).)  Limiting her to only examining locations requiring air travel is not reasonable, as is limiting her to examinations she could perform remotely, because her physical presence at the registrants' offices is essential.  (Id. ¶ 72(p).)  Finally, the CBA did not permit full-time telework, except through the limited pilot program for which Ms. Solloway was not eligible.  (Id. ¶ 72(q).)

Additionally, Mr. Foy testified that plaintiff's requested accommodations would have imposed an undue hardship on the SEC for several reasons.  (DSMF ¶ 73(a)-(d).)[84]  Specifically, he testified that the ARO examination program runs

_____

[83] Defendant does not dispute PSMF ¶ 72, but states that the SEC had many other reasons why plaintiff's requested accommodations would pose undue hardship.  (R-PSMF ¶ 72.)  The Court accepts defendant's admission and does not include the remaining statements in R-PSMF ¶ 72.

[84] Plaintiff disputes DSMF ¶ 73 as immaterial because "these reasons were offered after the fact."  Although Mr. Foy's deposition occurred after plaintiff's

in teams, requiring team collaboration.  (Id. ¶ 73(b).) [85]   In order for Ms. Solloway to perform her essential job functions as an examiner, there are times she would need to come to the office for meetings, to review work papers, to get mail, to use the Bloomberg terminal, and because in-person contact adds value and information that contributes to the effectiveness of the job.  (Id. ¶ 73(a).)  A lack of appropriate technology, including cameras to show white boards or flip charts, meant that Ms. Solloway would not be able to participate fully in meetings or visits from SEC officials, which would create difficulties for the whole team

---

request was denied, it is clear that he was discussing information he shared with DPO regarding the hardships that the requested accommodation would have imposed at the time.  (See, e.g., Foy Dep. [116] 19 ("Q. The ultimate decision at least at this time—in 2013 the determination had been made by the disability program office that granting her requested accommodation of teleworking would've created an undue hardship, right? You were involved [with that decision] to the extent you provided factual information, right? . . . A. I provided information, facts, of why there could be potential undue hardship.").)  The Court modifies the proposed fact for clarity.  The Court resolves plaintiff's disputes with each sub-section of DSMF ¶ 73 in the text and notes following this note.

[85] Plaintiff disputes DSMF ¶ 73(b) because she contends that Mr. Foy admitted that ARO Employee and Ms. Solloway were on different teams.  (R-DSMF ¶ 73(b).)  This does not refute defendant's proposed fact.  Accordingly, plaintiff's objection is overruled.

and prevent her from obtaining knowledge necessary to her job.  (Id. ¶ 73 (c)-(d).)[86]

Additionally, Ms. Dignam testified that plaintiff's requested accommodations would have imposed an undue hardship on the SEC for several reasons.  (DSMF ¶ 74(a)-(g).)[87]  Specifically, she reiterated that physical presence is required from time to time at unpredictable intervals, including for required in-person training, and at examination kick-off meetings, which were normally completed with people sitting around a conference table.  (Id. ¶¶ 74(a), (b), (d).)  The Bloomberg terminal could not be accessed remotely, and the monthly video

―――――――――――――――――

[86] Plaintiff disputes DSMF ¶ 73(a), (c), (d) because she contends that Mr. Foy admitted that full-time telework would allow an employee to perform her job if she came to the office when needed, but this accommodation was not offered to her, and that Mr. Foy stated that he did not plan on approving full-time telework, not that it was an undue burden.  (R-DSMF ¶ 73(a), (c), and (d).)  That Mr. Foy testified that five days of telework would allow an employee to perform her job if she came to the office when needed is consistent with DSMF ¶ 73(a).  The Court overrules the remainder of plaintiff's responses, which are argumentative and propose new facts.

[87] Plaintiff does not dispute that Ms. Dignam offered the reasons listed in DSMF ¶ 74 "per se," but states that Ms. Dignam's reasons "are only relevant because the SEC refused to consider any accommodation that did not meet 100% of Plaintiff's initial request," that she was flexible and willing to consider alternatives, and the temporary accommodation worked.  (R-DSMF ¶ 74.)  The Court accepts plaintiff's admission and does not include the remaining statements in R-DSMF ¶ 74.

50

teleconference could not be viewed on a computer.   (Id. ¶ 74(b), (e).)
Additionally, an employee on full-time telework would not be nearly as effective
as an employee in the office at least a few days a week because, for instance,
during core working hours the telework systems would become overloaded with
traffic, resulting in slow service and frequent disconnections, significantly
reducing efficiency.  (Id. ¶ 74(g).)  Finally, there was no way to preclude ARO
Employee from coming to the office.  (Id. ¶ 74(f).)

Accordingly,   on   May   24,   2013,   the   SEC   rejected   plaintiff's
accommodation request in writing.  (PSMF ¶ 69; R-PSMF ¶ 69; Solloway Dep.
Ex. 13 [115-5].)[88]  DPO listed specific reasons why her requested accommodation
would present undue hardship.  (DSMF ¶ 76.)[89]  The written rejection explained
that some situations require all-hands participation at the ARO and require even
teleworking employees to report to the office.  (Id. ¶ 76(b).)  It further noted that

_____

[88] Defendant does not dispute PSMF ¶ 69, but states that it offered plaintiff
reassignment as an alterative accommodation.  (R-PSMF ¶ 69.)   The Court
accepts defendant's admission and does not include the remainder of R-PSMF ¶
69, particularly given that defendant admitted the nearly identical PSMF ¶ 75.

[89] Plaintiff does not dispute that DPO offered the reasons listed in DSMF ¶
76, but states that those reasons "are relevant only because Defendant refused to
consider any alternative accommodations," and repeats her argument regarding
Mr. Foy's testimony. (R-DSMF ¶ 76.)  The Court accepts plaintiff's admission
and does not include the remaining statements in R-DSMF ¶ 76.

ARO management could not guarantee that Ms. Solloway would never have contact with ARO Employee, could not legally bar him from working or attending training events in the ARO, and even if it could, this would be an undue hardship because the SEC needs ARO Employee to be able to work in the office. (Id. ¶¶ 76(a), (c), (d).)  ARO Employee might, without prior notice, call into (and speak via telephone at) a meeting or training even when scheduled to be on leave, and the ARO cannot legally bar him from interrupting leave to participate in such events.  (Id. ¶¶ 76(e)-(f).)

Additionally, the DPO's letter explained that the ARO is located in a public building with a lobby, cafeteria, gym, and parking structure, all of which are shared with non-ARO Employees, and any of which ARO Employee might use during or outside of work hours, during his lunch break, or even while on leave. (DSMF ¶ 76(h).)   Because the ARO cannot legally restrict ARO Employee's movements outside of work hours or while he is on leave, or require ARO Employee to notify management regarding his whereabouts when not on duty at the ARO, the letter explained, the ARO could not guarantee that Ms. Solloway would be able to "totally avoid" him inside and outside the building, during and outside of work hours.  (Id. ¶¶ 76(g), (i).)  Plaintiff's requested accommodation would result in a "de facto restraining order to eliminate any contact between

52

Plaintiff and [ARO Employee]."  (DSMF ¶ 77; Solloway Dep. Ex. 15 [115-7] 4.)[90]

DPO also explained that it had determined no alternative accommodation acceptable to Ms. Solloway was available that would permit her to perform the essential functions of her job.  (DSMF ¶ 78, as modified per R-DSMF ¶ 78; Solloway Dep. Ex. 13 [115-5] 2.)[91]  DPO thus issued a Part 15 offer, a "Noncompetitive Reassignment as Accommodation of Last Resort," to reassign plaintiff to another office.  (DSMF ¶ 79; PSMF ¶ 75; R-PSMF ¶ 75.)[92]

_____

[90] Plaintiff contends, without citation, that DSMF ¶ 77 is immaterial because she never requested a restraining order.  (R-DSMF ¶ 77.)  The reasons DPO provided for denying plaintiff's requested accommodation are material facts. Accordingly, plaintiff's objection is overruled.  The Court declines to consider the remainder of plaintiff's argumentative response.

[91] Plaintiff disputes DSMF ¶ 78's statement that DPO determined no alternative accommodation existed "based on the interactive process and feedback received from plaintiff," because she contends there was no interactive process. (R-DSMF ¶ 78.)  Defendant's record citation (to the letter informing her of its denial of the 2013 request) shows only that DPM stated that it "conducted the interactive process through email correspondence with requestor . . . and conferences with requestor's supervisors."  (Solloway Dep. Ex. 13 [115-5], at 2.) Because whether the parties engaged in the interactive process is a legal issue to be decided in the instant case, the Court modifies the proposed fact to remove reference to it.

[92] Plaintiff disputes DSMF ¶ 79 because she contends that the temporary accommodation was successful.  (R-DSMF ¶ 79.)  This statement is argumentative, and does not refute defendant's proposed fact.  Accordingly,

### S.     Plaintiff's Performance Appraisals for Fiscal Year 2013

On May 24, 2013, Ms. Solloway received her mid-year evaluation for fiscal year 2013.  (DSMF ¶ 80; R-DSMF ¶ 80.)  A mid-year evaluation includes "comments from your rating official" without numerical ratings or a pass/fail designation.  (DSMF ¶ 81; R-DSMF ¶ 81.)  To the extent that the comments in plaintiff's mid-year evaluation suggested improvement, they were in the same areas highlighted in her 2012 review.  (DSMF ¶ 82; R-DSMF ¶ 82.)[93]  Because the fiscal year 2013 mid-year evaluation was not a permanent rating and did not contain numerical ratings or an acceptable/unacceptable rating, plaintiff did not lose any employment benefits as a result of that evaluation.  (DSMF ¶¶ 83-84; R-DSMF ¶¶ 83-84.)

### T.     The ARO Reorganizes in 2013

The ARO announced a new reporting structure on June 21, 2013.  (DSMF ¶ 85; R-DMSF ¶ 85.)  Ms. Solloway had previously requested that Latasha Bond be reassigned as her supervisor, but ARO management did not so reassign her.

---

plaintiff's objection is overruled.

[93] Plaintiff does not dispute DSMF ¶ 82, but states without citation that these comments "were directly correlated with her need for an accommodation." (R-DSMF ¶ 82.)  The Court accepts plaintiff's admission and does not include the remaining statements in R-DSMF ¶ 82.

(DSMF ¶ 86; R-DSMF ¶ 86.)    Mr. Foy testified that although one of the reorganization's objectives was to "create mixed groups of skill sets," ARO management kept plaintiff under Mr. Russell's group because he believed she would "have a better opportunity to succeed" in that group based on her skill set and experience, as Ms. Bond supervised staff with specific experience in examining investment advisors, which plaintiff did not have as a broker-dealer and transfer agent examiner.   (DSMF ¶¶ 87-88, as modified per R-DSMF ¶¶ 87-88; Foy Dep. [116] 49; Solloway Dep. [115] 14.)[94]

### U.    The Notice of Proposed Removal

On July 8, 2013, Ms. Solloway's counsel notified DPO that plaintiff was rejecting DPO's offer of noncompetitive reassignment.  (DSMF ¶ 89; R-DSMF ¶ 89; PSMF ¶ 76; R-PSMF ¶ 76.)  On September 4, 2013, the SEC issued plaintiff a Notice of Proposed Removal for medical inability to perform her essential job functions.  (DSMF ¶ 90; R-DSMF ¶ 90; Solloway Dep. Ex. 15 [115-7].)

According to the Notice of Proposed Removal, Ms. Solloway's medical documentation showed that she has PTSD, general anxiety disorder, heart

---

[94] Plaintiff disputes the reasons why the ARO did not transfer her to Ms. Bond's group listed in DSMF ¶¶ 87-88. (R-DSMF ¶¶ 87-88.)  The Court cites to Mr. Foy's testimony, which speaks for itself.  (See Foy Dep. [116] 49-51.)

problems, high blood pressure, and panic attacks which are triggered by being in the same workplace as ARO Employee. (DSMF ¶ 91(a); R-DSMF ¶ 91.) Because of these medical conditions, plaintiff was no longer able to perform several essential duties of her position, including working in the office environment where ARO Employee might be present, attending meetings and trainings in the office when ARO Employee is present or may be calling in and speaking by telephone, and conducting on-site examinations at registrant offices when ARO Employee is present. (DSMF ¶ 91(b); R-DSMF ¶ 91(b).) The Notice also stated that plaintiff's treating physicians confirmed that she was unable to perform these essential duties as a result of her medical impairments. (DSMF ¶ 91(c); R-DSMF ¶ 91(c).)

The Notice explained that because DPO determined that the ARO could not accommodate Ms. Solloway's request to avoid ARO Employee totally, and because plaintiff rejected DPO's noncompetitive reassignment offer, the SEC had to conclude that she could not perform the essential functions of her position as her position requires daily and frequent interaction with coworkers; she is often required to be part of office-wide conference calls and meetings, which also require ARO Employee's participation; it is impossible for the SEC to guarantee that plaintiff and ARO Employee will never come into contact during the work

day; plaintiff's core duties as an accountant require her to travel to perform examinations at registrant work sites; she needs to be in the office at least some of the time in connection with the exam work she performs; and that "there is no reasonable accommodation that would allow [her] to perform all the essential functions of [her] position given [her] medical impairments." (DSMF ¶ 92 (a)-(f); PSMF ¶ 82, as modified per R-PSMF ¶ 82[95]; Solloway Dep. Ex. 15 [115-7];[96] PSMF ¶ 74, as modified per R-PSMF ¶ 74[97]; Solloway Dep. Ex. 13 [115-5].)

_____

[95] Defendant does not dispute PSMF ¶ 82, which states that the SEC claimed that there was no reasonable accommodation that would allow plaintiff to perform her job. (R-PSMF ¶ 82.) Defendant states that the SEC concluded only that there was no reasonable accommodation that would allow her to perform all essential functions of her position given her impairments and requirement that the SEC guarantee her no contact with ARO Employee. (Id.) The Court modifies the proposed fact per the document cited, the Notice of Proposed Removal, which speaks for itself.

[96] Plaintiff disputes the reasons why she could not be accommodated in DSMF ¶ 92 because "these reasons are only relevant because the SEC refused to consider any alternative accommodation" and "two months earlier . . . the SEC announced a new initiative to establish telework schedules of up to five days per week." (R-DSMF ¶ 92.) The record citation shows that defendant provided each of the reasons in the Notice of Proposed Removal. (See Solloway Dep. Ex. 15 [115-7].) Accordingly, the Court will not consider plaintiff's argumentative objections to the merits of those reasons.

[97] Defendant disputes PSMF ¶ 74's statement that instead of offering to reinstate the temporary accommodation or convert the successful temporary accommodation into a permanent accommodation, the SEC took an all-or-nothing approach and found that she was unable to do her job. (R-PSMF ¶ 74.)

The Notice of Proposed Removal explained that because plaintiff's inability to perform the essential functions of her position appeared to be permanent, and because she rejected the SEC's reassignment offer, the SEC had no alternative but to propose her removal to promote the efficiency of the service due to the substantial negative impact of plaintiff's inability to perform all of her essential job duties at the ARO.  (DSMF ¶ 93.)[98]

## V.   The SEC Changes its Telework Program

On July 12, 2013, SEC Chairman Mary Jo White sent an email to all SEC employees notifying them that the SEC had "agreed on a new contract with its union that will allow some employees to telecommute as many as five days a week," that "[t]he deal was announced to SEC employees on July 12 in an e-mail from SEC Chairman Mary Jo White and union president Greg Gilman," and that "[t]he e-mail says telecommuting will be available for three, four, or five days a

---

Defendant contends that plaintiff was offered reassignment as an alternative accommodation, which she refused.  (Id.)  The Court modifies PSMF ¶ 74 to reflect the document cited, which speaks for itself.  (Solloway Dep. Ex. 15 [115-7].)

[98] Plaintiff disputes DSMF ¶ 93 because she contends that "the SEC reached this decision because it refused to consider any alternative accommodations," and that "this rationale was pretext."  (R-DSMF ¶ 93.)  The Court overrules plaintiff's objection as argumentative and asserting an improper legal conclusion.

week and will be "phased in across the agency." (PSMF ¶ 77, as modified per R-PSMF ¶ 77; Pl. Ex. 9 [113-9].)[99]   This announcement came after a report by factfinder Paul Greenberg describing "the successful precedent of the Expanded Telework pilot project," and noting that the "SEC never . . . made an argument to NTEU that the dramatically expanded program had resulted in an adverse impact on Agency operations." (PSMF ¶ 78, as modified per R-PSMF ¶ 78; Pl. Ex. 10 [113-10] 40.)[100]

Specifically, the new agreement permitted employees to telework up to five days per week and significantly expanded the SEC's telework infrastructure, equipment, and IT support. (DSMF ¶ 97(b); R-DSMF ¶ 97.) Full-time telework employees would receive upgraded equipment, training, and IT assistance to

---

[99] Defendant disputes PSMF ¶ 77's contention that this email notified employees that telework would be available for three, four, or five days a week. (R-PSMF ¶ 77.) Defendant states that it announced only that the SEC agreed on a new contract with the NTEU that would allow some employees additional telework benefits. (Id.) The Court quotes the document cited, a news article describing the email, which speaks for itself.

[100] Defendant does not dispute that plaintiff's Exhibit 10 is "a document that purports to be" Mr. Greenberg's report, but states that the cited document does not support the facts alleged. (R-PSMF ¶ 78.) Plaintiff's proposed fact states that the new telework benefit was the result of Mr. Greenberg's findings that the expanded telework program was successful and the SEC did not argue that expanded telework presented an adverse impact. (PSMF ¶ 78.) The Court quotes plaintiff's Exhibit 10, which speaks for itself.

establish and maintain their alternative work site; and, given these improvements, plaintiff's duties would no longer require her to perform tasks or attend meetings, conferences, or trainings at the ARO.  (DSMF ¶ 97(c)-(d); R-DSMF ¶ 97.)[101]

The new collective bargaining agreement signaled a shift in culture; Ms. Dignam testified that the change in the SEC's telework policy reflected a "radical change of mindset" among SEC management regarding "the importance of face-to-face communications," which was in part fostered by the new chair of the SEC that joined the agency in 2013.  (DSMF ¶ 98, as modified per R-DSMF ¶ 98;

---

[101] Plaintiff objects to DSMF ¶¶ 99-100, which state that telework became more efficient due to the new equipment and that the SEC adopted new technologies that facilitated more meaningful remote participation in meetings, respectively.  (R-DSMF ¶¶ 99-100.)   Defendant's record citations do not support these facts.  Defendant supports DSMF ¶ 99 with a citation to the deposition of Karen MacRae Smith, where she states only that she was using "the new equipment" to telework and that "it was better with the new equipment," but notes that she was "unique" and her experience did not apply to other employees because she used a Mac computer.  (Smith Dep. [110-14] 57.)  This does not show that telework became more efficient at the SEC due to new technology. Defendant supports DSMF ¶ 100 with a citation to Mr. Foy's deposition, where he states only that the SEC used to use MeetingPlace technology and currently uses WebEx, but does not describe the technologies or state their differences, or when the technologies were implemented.  (Foy Dep. [116] 98.)  This does not show that the SEC adopted new technologies that facilitated more meaningful remote participation in meetings.  Accordingly, the Court sustains plaintiff's objection and excludes DSMF ¶¶ 99-100.

PSMF ¶ 79, sent. 1; R-PSMF ¶ 79.)[102]   Ms. Dignam did not agree with the new mindset regarding telework, but agreed to follow the new directive.  (PSMF ¶ 79, sent. 2, as modified per R-PSMF ¶ 79, sent. 2; Dignam Dep. [117] 100:25:101-3.)  The expanded telework program went into effect in November 2013.  (PSMF ¶ 86; R-PSMF ¶ 86; Pl. Ex. 11 [113-11], at 3-4.)

### W.   Plaintiff's 2013 Administrative Leave

After she rejected the Part 15 offer, Ms. Solloway was placed on administrative leave, a paid non-duty status, effective September 4, 2013. (DSMF ¶ 94; R-DSMF ¶ 94; PSMF ¶ 80; R-PSMF ¶ 80; Solloway Dep. Ex. 15 [115-7] (Notice of Proposed Removal) 2-5.)[103]   While on administrative leave,

_____

[102] Plaintiff does not dispute that Ms. Dignam so testified, but states that she also testified that she personally did not agree with this new mindset but agreed to follow the new directive.  (R-DSMF ¶ 98.)  Plaintiff's contention is supported by the record.  (See Dignam Dep. [117] 100:25:101-3 ("[W]hatever my personal view was, that was not the view of the chair of the SEC.  And so I followed the rule of the chair of the SEC.").)  Accordingly, the Court modifies the proposed fact to better reflect the record.  Plaintiff also states that the change in policy was not a radical change of mindset because full-time telework was permitted under the old CBA.  (R-DSMF ¶ 98.)  The Court addressed what the CBA previously allowed supra Part I.D.

[103] Defendant disputes PSMF ¶ 81, which states that Ms. Solloway was removed from her position because defendant considered her "suddenly unable to perform her job as a direct result of her disability."  (R-PSMF ¶ 81.)  Because this reason is not included in the record citation (the Notice of Proposed Removal),

plaintiff continued to receive her full pay and benefits.  (DSMF ¶ 95; R-DSMF ¶ 95.)  Plaintiff remained on administrative leave until she returned to work on March 10, 2014.  (DSMF ¶ 96, sent. 1; R-DSMF ¶ 96.) [104]  During this period of time, the SEC did not require plaintiff to come into the office or perform any work.  (DSMF ¶ 96, sent. 2; R-DSMF ¶ 96.)

### X.    Plaintiff is Granted an Accommodation and Returns to Work

On February 5, 2014, the SEC notified Ms. Solloway of the changes to the SEC's telework program.  (DSMF ¶ 97(a); R-DSMF ¶ 97; Pl.'s Exs. 9 [113-9], 11 [113-11].)  On February 28, 2014, DPO notified Ms. Solloway that, given the new collective bargaining agreement and telework changes, it would grant her a full-time telework schedule, as this would no longer impose an undue hardship for the ARO.  (DSMF ¶ 101; R-DSMF ¶ 101.)  Plaintiff accepted full-time telework as an accommodation, the Notice of Proposed Removal was rescinded, and she resumed working on March 10, 2014.  (DSMF ¶ 102; R-DSMF ¶ 102; PSMF ¶ 88; R-PSMF ¶ 88.)  Since reporting back to work, Ms. Solloway has

the Court excludes PSMF ¶ 81.

[104] The Court excludes PSMF ¶ 87, stating that even though other employees were permitted to work a full-time telework schedule for at least twelve weeks, Ms. Solloway was not, as repetitive.  The Court addressed Mr. Lasseigne's short-term full-time telework supra note 30.

continued working on a full-time telework basis through the present.  (DSMF ¶ 103; R-DSMF ¶ 103.)   Throughout her time at the SEC, plaintiff has never received any performance or disciplinary actions and has never received an unacceptable rating on a performance review.  (DSMF ¶ 104; R-DSMF ¶104.)

## II.   <u>SUMMARY JUDGMENT STANDARD</u>

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  <u>See</u> Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact."  <u>Rice-Lamar v. City of Fort Lauderdale</u>, 232 F.3d 836, 840 (11th Cir. 2000) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  Those materials may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324.  Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  If in response the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate.  Rice-Lamar, 232 F.3d at 840.  "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party."  Id. (citing Anderson, 477 U.S. at 255).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact but rather to determine whether there are any such issues to be tried.  Anderson, 477 U.S. at 250.  The applicable substantive law will identify those facts that are material.  Id. at 248.  Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment.  Id.  Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  For factual issues to be "genuine," they must have a real

64

basis in the record.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial."  Id. at 587.

## III.   **DISCUSSION**

Given the parties' stipulation to the withdrawal of Counts II, V, VI, VII, and VIII (see supra n.2), three claims remain for analysis:  (1) failure to accommodate under the RHA (Count I); (2) retaliation in violation of the RHA (Count III); and (3) discrimination in violation of the RHA (Count IV).  "'The [Rehabilitation] Act prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability.'"  Shiver v. Chertoff, 549 F.3d 1342, 1344 (11th Cir. 2008) (quoting Mullins v. Crowell, 228 F.3d 1305, 1313 (11th Cir. 2000)); see also 29 U.S.C. § 791.  "The standard for determining liability under the Rehabilitation Act is the same as that under the Americans with Disabilities Act" ("ADA").  Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing 29 U.S.C. § 794(d); see also Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000).  Thus, the Court cites both RHA and ADA cases below.

### A.      Plaintiff's RHA Failure to Accommodate Claim (Count I)

A failure to accommodate claim arises when a covered entity fails to fulfill its affirmative duty to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability" without demonstrating that "the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). A plaintiff who claims that her employer failed to make reasonable accommodation for her known physical or mental limitation must show that (1) she is disabled, (2) she was a qualified individual at the relevant time, meaning she could perform the essential functions of the job in question with or without reasonable accommodations, and (3) a reasonable accommodation was not provided. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001). Once a plaintiff has shown that she is an otherwise qualified disabled individual within the meaning of the Act and that defendant has not provided a reasonable accommodation, defendant must do so unless it can assert undue hardship as an affirmative defense. 42 U.S.C. § 12112(b)(5)(A); Willis v. Conopco Inc., 108 F.3d 282, 286 (11th Cir. 1997) (per curiam); Harris v. H & W Contracting Co., 102 F.3d 516, 519 (11th Cir. 1996).

### 1.    Ms. Solloway is Disabled

The ADA defines a disability as (a) a physical or mental impairment that substantially limits one or more major life activities of an individual; (b) a record of such impairment; or (c) being regarded as having such an impairment.  42 U.S.C. § 12102(1); see also 29 C.F.R. § 1630.2(g); Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1327 (11th Cir. 1998).  Ms. Solloway contends that her mental impairment, PTSD, constitutes a disability because it substantially limits several of her major life activities.  A "mental impairment" is:

> [A]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h).  PTSD is a recognized mental impairment, see 29 C.F.R. § 1630.2(j)(3)(iii), but "PTSD, in and of itself, does not necessarily meet the statutory definition of an ADA disability."  Haines v. Cherokee Cty., No. 1:08-CV-2916-JOF/AJB, 2010 WL 2821853, at *12 (N.D. Ga. Feb. 16, 2010) (quoting Miller v. Fed Ex Corporate Office, No. 3:07-CV-18, 2008 WL 3020884, at *11 (N.D. Fla. July 30, 2008); see also Johnston v. Henderson, 144 F. Supp. 2d 1341, 1350 (S.D. Fla. 2001) (same) (citation omitted).  For her PTSD to rise to the level of a disability, Ms. Solloway must also show that it substantially limits a major life activity.  Haines, 2010 WL 2821853, at *12.

67

One is substantially limited in a major life activity if she is unable to perform a major life activity that the average person in the general population can perform, or if she is significantly restricted as to the condition, manner or duration under which she can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j). Major life activities include, inter alia, caring for oneself, seeing, hearing, eating, speaking, breathing, learning, sleeping, reading, concentrating, thinking, communicating, and working.  29 C.F.R. § 1630.2(i).  Major life activities also include the "operation of a major bodily function, including functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions."  Id.  Moreover, episodic impairments can constitute a disability, if, when triggered, they substantially limit a major life activity. 29 C.F.R. § 1630.2(j)(1)(vii).   "[T]he list is illustrative, not exhaustive."  Brogdon v. Abbott, 524 U.S. 624, 639 (1998).  Whether someone is substantially limited in a major life activity is an individualized inquiry, because symptoms of an impairment and their impact vary among those who suffer from them. Toyota Motor Mfg., Ky.,

68

Inc. v. Williams, 534 U.S. 184, 199 (2002); see also Garrett v. Univ. of Ala., 507 F.3d 1306, 1315 (11th Cir. 2007) (objective evidence of extent of one's limitations is necessary).

Defendant contends that Ms. Solloway has not shown that her PTSD rises to the level of a disability because she has not demonstrated that it substantially limits her in any major life activity. (See Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") [110-1] 22-25.)  Plaintiff responds that she has shown substantial limitation in several major life activities, particularly working, sleeping, and concentration. (See Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") [114] 19-22.)  In reply, defendant states that plaintiff has not provided specific evidence showing that she was substantially limited in any of those activities, particularly during the relevant time period. (See Def.'s Reply in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Reply") [122] 3-7.)

Defendant is correct that plaintiff does not provide evidence corresponding to specific dates during the relevant time period when she contends her PTSD was triggered, or evidence showing in detail what triggered it, or the type, severity, and duration of symptoms she experienced each time.  Nor does she present evidence specifically showing limitation in major life activities during the relevant time period resulting from specific triggering events, other than her

69

citations to testimony by Dr. Vaughn describing, generally, her panic attacks, insomnia, and poor concentration, as well as uncontrolled shaking, extreme stress, and physical inability to leave her home when triggered.  (See Pl.'s Resp. 19-22.) However, the undisputed evidence, when read in the light most favorable to plaintiff, shows that her PTSD substantially limited several of her major life activities.

It is undisputed that when triggered, Ms. Solloway's PTSD manifests itself in hypervigilance, crying spells, panic attacks, problems focusing, nightmares, insomnia, sleep disturbances, poor concentration, immobility, rapid heartbeat, sweaty palms, stomach problems, diarrhea, trembling hands, and uncontrollable shaking; and that she suffers from the inability to get out of bed or leave her home. The symptoms reliably occur each time Ms. Solloway's PTSD is triggered, which happens at unpredictable intervals.  Thus, at the very least, Ms. Solloway's sleep and concentration are interrupted when her PTSD is triggered, along with her digestive and bowel function, and her inability to leave her home may cause disruption to her work and personal care.

Given that episodic conditions can be sufficient to substantially limit major life activities, and that Congress intended that the definition of disability to "be construed in favor of broad coverage," 42 U.S.C. § 12102(4)(A); 29 U.S.C. §

70

705(9)(B) (incorporating into the RHA the definition of disability in the ADA), reading the evidence in the light most favorable to her, Ms. Solloway has shown that her PTSD meets this standard.  Accordingly, the undersigned finds that plaintiff has raised a triable issue over whether she is disabled by her PTSD pursuant to the RHA, and continues the analysis to determine whether Ms. Solloway is a qualified individual and whether the SEC reasonably accommodated her.

### 2.    Ms. Solloway is Not a Qualified Individual

The second element of plaintiff's failure to accommodate claim is whether she is a qualified individual.  To show that she was qualified, Ms. Solloway must demonstrate that she satisfies "the requisite skill, experience, education and other job-related requirements of the employment position," and that she is able to perform the "essential functions" of the position "with or without reasonable accommodation." 29 C.F.R. § 1630.2(m); see also 42 U.S.C. § 12111(8).

Defendant contends that Ms. Solloway cannot establish that she was a qualified individual because she requested and required both full-time telework and the ability to avoid ARO Employee totally, which rendered her unqualified for her job.  (Def.'s Mem. 26-27.)  Plaintiff disputes the SEC's argument that she could not have performed her job with her preferred accommodation, i.e., full-

71

time telework and the complete avoidance of ARO Employee, by responding that she could perform her job with the temporary accommodation, which allowed her to avoid ARO Employee but did not require the compete avoidance of the ARO. (Pl.'s Resp. 22-23.)   She further contends that presence in the office did not appear in her written job duties.  (Id.)  In reply, defendant contends that because plaintiff does not dispute that the temporary accommodation was successful, her claim must fail because there was never a time she was not reasonably accommodated.  (Def.'s Reply 7-12.)[105]

Because there is no contention that Ms. Solloway did not have the requisite skill, experience, education and other job-related requirements for her position, the undersigned considers whether plaintiff is able to perform the essential functions of her position with or without reasonable accommodation. The regulations implementing the ADA define the "essential functions" of a position to be the fundamental job duties of the employment position, as differentiated from its "marginal" functions. 29 C.F.R. § 1630.2(n). Additionally, evidence regarding whether a particular function is essential includes, but is not limited to,

---

[105] The undersigned discusses defendant's argument in this regard further infra Part III.A.3.

written job descriptions, the amount of time spent on the job performing the function, the consequences of not requiring performance of the function, and the terms of a collective bargaining agreement.   29 C.F.R. § 1630.2(n)(3). Consideration shall also be given to the employer's judgment as to what functions of a job are essential.  See id.; see also Davis v. Fla. Power & Light Co., 205 F.3d 1301, 1305 (11th Cir. 2000).

It is undisputed that in her written 2011 and 2013 accommodation requests, plaintiff stated that it was medically necessary for her to avoid ARO Employee completely, and to know that there would be no chance that their paths would cross.   Specifically, plaintiff's 2011 request sought indefinite full-time telework; advance notice of ARO Employee's schedule; the ability to decline assignments with ARO Employee; and provision of an alternate liaison.   The medical documentation plaintiff submitted in support of this request stated that she would experience symptoms at even the possibility of contact with ARO Employee, and the FOH physician ultimately concluded, based on this evidence, that she was unable to work in the ARO as long as ARO Employee was in the building. Plaintiff did not appeal this finding.  Based on the same medical evidence, plaintiff's 2013 request sought the ability to avoid ARO Employee totally, including inside the ARO, at another SEC office, or while conducting

examinations.  She also sought to be assigned only to examinations to which she could fly or be driven by another team member.

The undisputed evidence also shows that Ms. Solloway's occasional presence in the office is an essential requirement of her job.  Plaintiff's presence is required at the ARO to attend meetings and trainings, receive mail, review papers, access the Bloomberg terminal, and spend face-to-face time with other members of her team.  Plaintiff was unable to be present in the ARO, and because the technology to enable meaningful remote participation in required in-office meetings was not available to plaintiff before she returned to work in March 2014, she could not participate in such activities from home.  Additionally, because the SEC could not reasonably assign plaintiff only to examinations into which she could fly or be driven by a co-worker, she was unable to complete examinations off-site.  Moreover, the undisputed facts show that the CBA did not contemplate permanent, full-time telework.

Thus, to the extent that plaintiff actually required the full list of accommodations sought in her requests, she could not perform at least two essential functions of her position (occasional attendance at the ARO and off-site examinations) and has failed to create a triable issue of fact regarding whether she was a qualified individual under the RHA.  See Lewis v. Zilog, Inc., 908 F. Supp.

74

931, 947 (N.D. Ga. 1995) (citing <u>Tyndall v. Nat.'l Educ. Ctrs.</u>, 31 F.3d 209, 213 (4th Cir. 1994) ("an employee must be willing and able to demonstrate, for an ADA claim, the skills necessary to perform the job in question by coming to work on a regular basis")).  In order to provide a complete recommendation, however, the undersigned continues the analysis to determine whether the SEC reasonably accommodated Ms. Solloway.

### 3.     The SEC Reasonably Accommodated Ms. Solloway

The term "reasonable accommodation" has many meanings, but in the context of this case, the term means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position."  29 C.F.R. § 1630.2(o)(1)(ii).  Under the ADA, a "reasonable accommodation" may include, <u>inter alia</u>, "job restructuring, parttime or modified work schedules, reassignment to a vacant position, acquisition or modifications of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."  <u>Id.</u> § 16302(o)(2)(ii).

That list notwithstanding, "[t]he use of the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires." Lewis, 908 F. Supp. at 947.  This is so because the word "reasonable" would be rendered superfluous in the ADA if employers were required in every instance to provide employees "the maximum accommodation or every conceivable accommodation possible." Id.

"Stated plainly, under the ADA a qualified individual with a disability is 'not entitled to the accommodation of her choice, but only to a reasonable accommodation.'" Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1286 (11th Cir. 1997) (quoting Lewis, 908 F. Supp. at 948).   An accommodation is reasonable–and, therefore, required under the ADA–only if it enables the employee to perform the essential functions of the job.  29 C.F.R. § 1630.2(o)(2)(ii). The burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of her job rests with that employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable.  Stewart, 117 F.3d at 1286.

Despite the fact that plaintiff's two requests for accommodation (and supporting medical documentation) stated that she needed not only to avoid all

contact with ARO Employee, but also even the possibility of such contact, and despite the fact that plaintiff requested both full-time telework and the ability to never come into the ARO in both of her written accommodations, she now argues that the SEC improperly rejected her request on an all-or-nothing basis, because she remained open to an accommodation short of everything that she requested and did not intend her requests on a take-it-or-leave-it basis. (Pl.'s Resp. 23-25.) Specifically, Ms. Solloway now states that the temporary accommodation provided while her 2011 request was pending was sufficient and that full-time telework was "not the only option [, as] Defendant could have converted the successful, temporary accommodation into a reasonable accommodation, but it did not." (Id. at 24 (describing 2011 temporary accommodation).) Defendant replies that because the temporary accommodation was successful, and because plaintiff was allowed to telework to the same degree provided for under the temporary accommodation during all times in which she was not otherwise accommodated, she cannot show that there was a time when she was not accommodated. (Def.'s Reply 7-12.)

It is undisputed that the temporary accommodation that the SEC granted to Ms. Solloway during the pendency of her 2011 request for accommodation provided that she would telework five days of every two-week period while ARO

Employee teleworked the opposite five days, so that they would never be in the ARO at the same time.  It is also undisputed that this temporary accommodation was successful and enabled plaintiff to perform her job.  The temporary accommodation was in place from the time Ms. Solloway submitted her June 2011 request for accommodation through the time it was denied in December 2011.

It is further undisputed that once DPO denied plaintiff's 2011 request for accommodation, she continued to telework at the same frequency that she had under the temporary accommodation.  Specifically, Ms. Solloway continued her recurring two-day per week telework arrangement, while ARO Employee continued teleworking on two opposite days. Although plaintiff was worried about the schedule on the one day they overlapped, Wednesday, it is undisputed that she was given the opportunity to request a third ad hoc day whenever ARO Employee would be in the office.  As defendant observes, plaintiff has submitted no evidence showing that any such requests were ever denied after Mr. Dennis retired and Mr. Russell became her supervisor—and most importantly, plaintiff has not provided evidence of even a single ad hoc request that was denied after the 2011 temporary accommodation ended.  Plaintiff did not see ARO Employee

for two years between May 2011 and March 2013.  During this time, the record shows that plaintiff was able to perform her normal work activities successfully.

Plaintiff was given another temporary accommodation, permission to telework up to full time, when she filed her second request for accommodation in 2013.  This temporary accommodation again lasted from the time she submitted the request until the time the request was denied.  After that request was denied and plaintiff refused the SEC's offer of reassignment, she was placed on paid administrative leave through March 2014, when she came back to work on a full-time telework schedule.  Thus, the only time period during which plaintiff was not on either a temporary accommodation or paid leave was the time period of December 2011 through March 2013 (the time after her 2011 request was denied and when she filed her 2013 request.)

Because it is undisputed that plaintiff was able to continue teleworking between two and three days per week, albeit informally, during that entire period, avoid ARO Employee, and successfully perform her job, the undersigned agrees with defendant that, despite the fact that plaintiff was denied her preferred accommodation, she was always reasonably accommodated, even though the SEC did not formally describe this arrangement as such.  See Earl v. Mervyns, Inc., 207 F.3d 1361, 1367 (11th Cir. 2000) (per curiam) (a disabled employee is not

entitled to the accommodation of his choice, but only to a reasonable accommodation); Dalton v. Sebelius, 1:11-CV-3392-MHS-JCF, 2014 WL 11460778, at *16 (N.D. Ga. Feb. 19, 2014) (defendant provided a reasonable accommodation when it "offered Plaintiff an accommodation that allowed her to report to a different supervisor, avoid communications with Dr. Shepeard and Allen-Lewis, and work on a different floor").

Accordingly, plaintiff has failed to create a triable issue of fact over whether she was reasonably accommodated and summary judgment should be granted in favor of the SEC as to her failure to accommodate claim. The undersigned continues the analysis, however, to consider whether, even if plaintiff could establish each element of her prima facie case, the SEC has shown that her requested accommodation would cause undue hardship.

### 4.     The SEC Has Shown Undue Hardship

An employer must provide reasonable accommodation for known disabilities unless that accommodation would result in "undue hardship." Morisky v. Broward Cty., 80 F.3d 445, 447 (11th Cir. 1996) (per curiam). The ADA defines "undue hardship" as follows:

(A) In general

The term "undue hardship" means an action requiring significant difficulty or expense, when considered in light of the factors set forth in subparagraph (B).

(B) Factors to be considered

In determining whether an accommodation would impose an undue hardship on a covered entity, factors to be considered include –

(i) the nature and cost of the accommodation needed under this chapter;

(ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;

(iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12111(10).

Defendant contends that it offered Ms. Solloway "every accommodation possible that would not pose an undue hardship on the SEC, including reassignment," and when her requested accommodation of full-time telework no

81

longer caused such hardship, it granted her request and continues to provide that accommodation today.  (Def.'s Mem. 6, 15-19; Def.'s Reply 11-12.)   Plaintiff responds that full-time telework could not have imposed an undue hardship at the time, and that the SEC erred in treating her request as an all-or-nothing request. (Pl.'s Resp. 23-25).

To the extent plaintiff bases her failure to accommodate claim on the denial of her 2011 and 2013 accommodation requests, the issue on summary judgment is whether the SEC has shown that granting those requests would have caused undue hardship.  The SEC provided multiple reasons why plaintiff's request for both full-time telework and a guarantee that she would never see ARO Employee would pose an undue hardship.   Most importantly, Ms. Solloway's physical presence is required in the office from time to time for meetings, training, research, and collaboration.  The ARO examination program is team-based, so Ms. Solloway's absence for mandatory quarterly, monthly, mid-year and year-end meetings, required trainings, and kick-off, debriefing, and exit interviews, would impair her own efficacy and her team's efficiency in performing its work.  While missing some meetings would not pose an undue hardship, and dialing in via phone could be a successful replacement for in-person attendance at least some of

the time, neither option would work as a permanent solution because no employee could miss every event, and because active participation is difficult via telephone.

Moreover, because the SEC could not control the whereabouts of ARO Employee both during the workday and outside of it, there was no way to guarantee that Ms. Solloway would never come in contact with him, especially given that the ARO is located in a public building with parking, gym, and cafeteria facilities. The SEC could not legally bar ARO Employee from coming into the office or participating in meetings or trainings (and speaking up during these meetings for plaintiff to hear) even while on leave. Even if it could, this too would present an undue hardship because the SEC needed ARO Employee to be able to work in the ARO for the same reasons as it required Ms. Solloway to work there. Finally, full-time telework was not permitted by the CBA.

Plaintiff contends that "it cannot seriously be argued that telework imposed an undue hardship" because she has successfully worked from home five days per week since March 2014, and according to her, her job did not require in-person communication. (Pl.'s Resp. 24) As the undisputed facts show, however, plaintiff's job did involve at least some in-person meetings and occasional presence in the ARO, and the technology to participate remotely was insufficient at the time. Moreover, full-time telework was not contemplated by the CBA in

effect before March 2014.  Finally, even though the SEC permitted Ms. Solloway to work from home full-time as part of her 2013 temporary accommodation, "the fact that an employer previously has granted a requested accommodation does not render that accommodation reasonable." Webb v. Donley, 347 F. App'x 443, 446 (11th Cir. 2009).

Plaintiff disputes that the CBA barred full-time telework because she argues that it contemplated two recurring telework days and between one and three ad hoc days per week.  The record shows that the CBA could provide for either a recurring or an ad hoc arrangement, not that the two types of telework days could be combined for a total of five days.  Plaintiff also contends that up to five days of telework was permitted under exceptional circumstances.  The record again shows only that ad hoc telework could be granted for up to five days in special situations—as a short-term arrangement—not that five-day, recurring, full-time telework was permitted.  Moreover, it is undisputed that the only other instance in which the CBA mentions full-time telework, the pilot program, was closed to new participants long before Ms. Solloway sought to work from home.

The SEC has provided multiple valid reasons why plaintiff's requested accommodations would impose undue hardship.  Accordingly, even if plaintiff had successfully shown that she was a qualified individual, and that she was not

84

reasonably accommodated, defendant has shown that granting her request would cause hardship. See Webb, 347 F. App'x at 446 ("Because [plaintiff] did not produce any evidence showing that she would be able to complete her job functions while working the modified schedule, she did not raise a genuine issue of material fact with regard to whether the modified schedule was a reasonable accommodation.").

Accordingly, the undersigned **REPORTS** that plaintiff has failed to establish her reasonable accommodation claim (Count I) and **RECOMMENDS** that summary judgment be granted in favor of the SEC on that claim.

### B.    Plaintiff's RHA Retaliation Claim (Count III)

The RHA incorporates the anti-retaliation provision from § 12203(a) of the ADA. See 29 U.S.C. § 791(g). The same burden-shifting analysis used in Title VII cases applies under the ADA; thus, courts apply the framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. See Jackson v. Agency for Persons with Disabilities Fla., 608 F. App'x 740, 741-42 (11th Cir. 2015) ("If there is no direct evidence that an employer discriminated against a plaintiff on the basis of her disability, she may rely on the McDonnell Douglas framework to establish her case through circumstantial evidence."). Under this framework, plaintiff must first establish a prima facie case of

retaliation.  To establish a prima facie case of retaliation, Ms. Solloway must show that:  (1) she engaged in statutorily protected expression; (2) she suffered a materially adverse employment action; and (3) a causal relationship between the two events.  Parker v. Econ. Opportunity for Savannah-Chatham Cty. Area, Inc., 587 F. App'x 631, 633 (11th Cir. 2014); see also Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008).

If plaintiff establishes a prima facie case of retaliation, the burden shifts to the SEC to articulate a legitimate, non-retaliatory reason for its actions.  Raytheon Co. v. Hernandez, 540 U.S. 44, 49 n.3 (2003); Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).   This burden is "exceedingly light." Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997) (per curiam).  Once those reasons are articulated, plaintiff can avoid summary judgment only by showing that the SEC's reasons are "merely a pretext" for retaliation.  See Skotnicki v. Bd. of Trs. of The Univ. of Ala., No. 11-03497, 2014 WL 3891973, at *9 (N.D. Ala. Aug. 8, 2014) (quoting Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993)).

Defendant contends that plaintiff cannot establish a prima facie case of retaliation in violation of the RHA because she has not shown that she suffered an adverse employment action, and that it has established legitimate, non-retaliatory

86

reasons for each action she contends is adverse (denial of her 2011 and 2013 accommodation requests, her performance ratings, denial of her request for a new supervisor, and the Notice of Proposed Removal). (Def.'s Mem. 27-35.) Plaintiff responds that Mr. Dennis's repeated denial of ad hoc telework requests, Mr. Russell's presentation to her and to Mr. Foy of a list of meetings she missed, and the Notice of Proposed Removal are all adverse employment actions, and that defendant's claim of undue hardship is a pretext for retaliation. (Pl.'s Resp. 25-29.) Defendant replies that in the Response, plaintiff has narrowed her retaliation claim to the alleged adverse actions of presenting the list of missed meetings and the Notice of Proposed Removal, and she cannot show that either was an adverse employment action or causally connected to protected activity. (Def.'s Reply 12-20.) Defendant also contends that plaintiff has failed to raise a triable issue as to pretext. (Id.)

### 1.      Plaintiff's Prima Facie Case

Plaintiff asserts that she was retaliated against for (1) filing the 2011 request for accommodation on June 15, 2011, (2) filing a formal EEO complaint on February 16, 2012, (3) drafting an affidavit in support of her EEO complaint in August and September 2012, and (4) submitting that affidavit on September 4,

2012.  (Pl.'s Resp. 26-27.)  The parties do not appear to dispute that each of these activities constitutes protected conduct.

### a)     Adverse Action

The type of action that qualifies as adverse for a retaliation claim is broader than what would qualify for a discrimination claim.  Crawford v. Carroll, 529 F.3d 961, 973-74 (11th Cir. 2008).   An adverse action must be "materially adverse," meaning "significant and not trivial."  Tarmas v. Sec'y of the Navy, 433 F. App'x 754, 762-63 (11th Cir. 2011) (per curiam) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).   "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  Burlington, 548 U.S. at 67.   An action may be deemed "materially adverse" if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. at 68.

The SEC contends that because Ms. Solloway only addressed in her Response the list of missed meetings and the Notice of Proposed Removal, she has abandoned any claim to other alleged adverse actions.  (Def.'s Reply 12.) Plaintiff discusses those two actions, as well as the fact that Mr. Russell forwarded the list of meetings to Mr. Foy, and that Mr. Dennis denied ad hoc

telework requests, in the Response.  (See Pl.'s Resp. 25-29.)  Accordingly, the

undersigned addresses only those alleged adverse actions.[106]

---

[106] Even if plaintiff did not abandon her claims to other actions, to the extent she attempts to argue that the denial of her accommodation requests, her performance ratings, and the denial of her request for a new supervisor are adverse employment actions, she is incorrect.  As to the denials of her accommodation requests, these "simply maintained the status quo" by keeping Ms. Solloway on her recurring two-day per week telework schedule.  See Jeudy v. Holder, No. 10-22873, 2011 WL 5361076, at *8 (S.D. Fla. Nov. 7, 2011) (denial of accommodation was not an adverse action because it "required [plaintiff] to do nothing more than perform her job duties in the same manner, to the same extent, and under the same conditions as she had before she requested an accommodation.")  Moreover, even if denial of her accommodation requests was an adverse action, the Eleventh Circuit has held that denying a request for accommodation cannot be considered retaliation for requesting an accommodation in the first place.  See Calvo v. Walgreens Corp., 340 F. App'x 618, 625-26 (11th Cir. 2009) (plaintiff cannot "reclothe[]" her discrimination clam into a retaliation claim based solely on an alleged failure to accommodate (internal citations omitted)).  As to Ms. Solloway's performance ratings, because she was a member of the NTEU, only a rating of "acceptable," rather than a numeric rating, was reported in fiscal years 2011 and 2012, so she continued to receive merit salary increases despite a score drop from 3.8 to 3.0.  Additionally, her 2013 mid-year evaluation was not a formal evaluation, and plaintiff admitted that it did not affect her conditions of employment, including her compensation or benefits.  See Moore v. Shands Healthcare, Inc., 617 F. App'x 924, 927 (11th Cir. 2015) (per curiam) ("[Plaintiff] presented no evidence that the conditions of his employment were adversely altered when he received a performance appraisal . . . that did not affect his compensation . . . .").  Finally, because "the refusal to give an employee [a lateral] transfer cannot be an adverse employment action," see Barnhart v. Wal-Mart Stores, Inc., 206 F. App'x 890, 893 (11th Cir. 2006) (per curiam), the SEC's failure to re-assign plaintiff to Ms. Bond's group does not constitute an adverse employment action.

### (1)     Denial of Ad Hoc Telework Requests

Plaintiff contends that the SEC retaliated against her for making the 2011 accommodation request because after she asked that Mr. Dennis be made aware of that request, he began denying her ad hoc telework, and would delay his decision to approve or reject ad hoc telework until after she had already worked for the day, forcing her to take personal leave.  (Pl.'s Resp.  26.)  As defendant observes, federal employees are required to initiate administrative review of any alleged retaliatory conduct within forty-five days of the alleged act.  See 29 C.F.R. § 1614.105(a)(1); see also Mullins, 228 F.3d at 1310-11 (applying the 45-day exhaustion requirement to federal employees raising claims under the RHA). Generally, when the claimant does not initiate contact within the 45-day charging period, the claim is barred for failure to exhaust administrative remedies. See Brown v. Snow, 440 F.3d 1259, 1264-65 (11th Cir. 2006).

A reasonable employee in Ms. Solloway's position likely would have felt that denial of ad hoc telework requests, particularly after the day had already been worked, would be a deterrent to making a charge of discrimination.  However, the undisputed facts show that Mr. Dennis retired from the SEC on September 30, 2011, so each of his telework denials would have occurred before that date. Because this is more than forty-five days before plaintiff's formal EEO complaint

90

was submitted on February 16, 2012, any claims relating to Mr. Dennis's denial of ad hoc telework requests are time-barred. Thus, regardless of whether they constitute adverse actions, the undersigned cannot consider claims relating to those actions here.

### (2)   List of Missed Meetings

Plaintiff contends that Mr. Russell was aware that she worked on an affidavit in support of her EEO complaint between August and September 2012, and that in October 2012, despite not mentioning missed meetings in her mid-year review for fiscal year 2012, he presented her with a list of meetings he claimed she missed, all of which she alleges he approved leave for and some of which did not apply to her. (Pl.'s Resp. 26-27.)  Plaintiff further contends that these missed meetings were included in her year-end review, and that Mr. Russell forwarded this list to Mr. Foy on September 4, 2012, the same day she submitted the affidavit. (Id.)

As defendant observes, the list of missed meetings cannot constitute an adverse employment action because, even though it was included in her year-end review for fiscal year 2012, it is undisputed that her rating from that review was "acceptable," and she thus received a merit raise in her salary and no loss in benefits or other change in the conditions of her employment.  Moreover, the

91

undisputed evidence shows that Mr. Russell mentioned Ms. Solloway's lack of attendance at required meetings at multiple points throughout fiscal year 2012, and in fact created the list of meetings at Ms. Solloway's request.  She has also shown no changes in her employment stemming from the fact that Mr. Foy also received the list.  A reasonable employee in Ms. Solloway's position would not have been dissuaded from making or supporting a charge of discrimination based on a list of missed meetings, created at plaintiff's own request, that ultimately had no impact on plaintiff's "acceptable" performance review rating.  Thus, plaintiff has failed to show creating the list was an adverse employment action.

### (3)    Notice of Proposed Removal

Finally, plaintiff contends that the SEC's "ultimate response to resolve [her] requested accommodations" was proposing her termination in the Notice of Proposed Removal, despite the fact that it had announced an expansion of telework provisions just two months earlier, which "contradicted its hardship defense."  (Pl.'s Resp. 27.)   It is undisputed that after the SEC issued the Notice, it placed Ms. Solloway on paid administrative leave, during which time she received her full salary and benefits.  It is also undisputed that the SEC ultimately rescinded the Notice and granted plaintiff's request for full-time telework. Moreover, this Court has held that service of a Notice of Proposed Removal is not

a materially adverse action.  See Carrio v. Apollo Grp., No. 07-1814, 2009 WL 2460983, at *15 (N.D. Ga. Aug. 7, 2009) (placement of an employee on paid administrative leave pending the conclusion of an investigation is not a materially adverse action when "[p]laintiff was fully compensated for the remainder of [her] time away from work and the leave had no impact on and did not alter [her] job, duties, or compensation in any way.").  A reasonable employee would not have been dissuaded from making or supporting a charge of discrimination based on the issuance of a Notice of Proposed Removal, particularly given that it was ultimately rescinded, and that during the time it was pending, plaintiff received her full salary and benefits.  Thus, plaintiff has failed to show that issuing the Notice of Proposed Removal was an adverse employment action.

### b)    Causation

As to causation, Mr. Russell's October 2012 presentation of the list of meetings came one month after plaintiff drafted and submitted the affidavit in support of her EEO complaint in September 2012.  See Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (a plaintiff can establish a causal connection by showing "a close temporal proximity" between the time an employer becomes aware of the protected activity and the time the adverse action occurs).  As to the Notice of Proposed Removal, however, all of the protected

93

activity that plaintiff alleges occurred at least a year before it was issued in September 2013, significantly more time than what this Circuit considers demonstrative of retaliatory motive.  See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (three month interval between EEOC's right to sue letter and supervisor's announcement that she was contemplating employee's transfer insufficient to establish causation); Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 951 (11th Cir. 2000) (quoting approvingly district court's determination that seventh-month period was too attenuated); Wascura v. City of S. Miami, 257 F.3d 1238, 1245 (11th Cir. 2001) (three-and-one-half month time lag between protected activity and alleged retaliation, standing alone, insufficient for a finding of causation).  Thus, even reading the facts in the light most favorable to Ms. Solloway, any protected conduct was too far removed from the Notice of Proposed Removal to raise an inference of retaliation.

Because plaintiff has failed to establish that she suffered an adverse employment action and, as to at least one of her claims, did not establish causation, she did not establish a prima facie RHA retaliation claim, and summary judgment should be granted in defendant's favor.  See Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1433 (11th Cir. 1998) ("summary judgment against the plaintiff is appropriate if he fails to satisfy any one of the

94

elements of a prima facie case").  Despite this recommendation, the undersigned continues the analysis in the interest of providing a complete report, and next examines whether defendant has provided a legitimate, non-retaliatory reason for its actions.

### 2.    Defendant's Legitimate, Non-Discriminatory Reasons and Plaintiff's Failure to Prove Pretext

If plaintiff establishes a prima facie case of retaliation, the burden shifts to the SEC to articulate a legitimate, non-discriminatory reason for its actions. Raytheon Co., 540 U.S. at 49 n.3.  This burden is "exceedingly light."  Holifield, 115 F.3d at 1564.  Plaintiff can avoid summary judgment only by showing there are "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."  Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005).  Once the defendant has offered legitimate, nonretaliatory reasons for its employment actions, to overcome a motion for summary judgment, a plaintiff must proffer sufficient evidence for a facfinder to conclude that each of those reasons is pretextual.  See Skotnicki, 2014 WL 3891973, at *9. Here, the undisputed facts show that, with the exception of Mr. Dennis's time-barred ad hoc telework request denials, defendant had multiple legitimate, non-retaliatory reasons to take each of the alleged

95

adverse actions. Moreover, Ms. Solloway fails to show that the multiple reasons articulated by defendant are false and that her protected activity was the real reason for the alleged adverse actions.

As to the list of missed meetings, it is undisputed that, despite plaintiff's contention that Mr. Russell had never mentioned the meetings before, he brought them up repeatedly throughout fiscal year 2012. Additionally, it is undisputed that it was plaintiff who requested that Mr. Russell prepare that list. As to the Notice of Proposed Removal, the undisputed facts show that defendant issued the Notice only because it denied plaintiff's 2013 request for accommodation on the basis of undue hardship, and plaintiff subsequently refused its alternate accommodation of last resort, reassignment. Because plaintiff could not perform at least one essential element of her job—coming into the office—and because there was no reasonable accommodation that would enable her to do so without creating undue hardship, the SEC took the only option it had left, and proposed her removal.

Plaintiff's argument that defendant's legitimate, non-retaliatory reasons were pretextual centers around her contention that the SEC could have simply left the temporary accommodation in place but failed even to consider that option. (Pl.'s Resp. 28-29.) Plaintiff also argues that the SEC's contention that full-time

96

telework presented undue hardship could not possibly be true, because the revised CBA contemplated full-time telework, because the SEC allowed Mr. Lasseigne full-time telework for twelve weeks after surgery, and because some employees were allowed to enroll in the pilot program under the old CBA, which allowed four to five days of weekly telework.  (Id.)

As to the temporary accommodation, as discussed supra Parts III.A.3-4, there is nothing in the undisputed facts to suggest that plaintiff sought this accommodation.  In fact, there is no evidence that she ever sought anything less than full-time telework and a guarantee she would never have to come into the ARO.  All of the medical documentation submitted in support of both accommodation requests provided that plaintiff needed to avoid not only the presence of ARO Employee, but also even the possibility of such presence.  The undisputed facts show that plaintiff did not appeal the 2011 denial of her request for accommodation, which explicitly stated, inter alia, that her requested accommodation would have caused undue hardship because it consisted of both the ability to telework full-time and to never come into the ARO.  Had plaintiff disagreed with that contention at the time, or felt that it did not accurately describe her medical needs, she could have so indicated.  That she now claims the temporary accommodation was sufficient has no bearing on what she told the

97

SEC, and what the SEC reasonably believed, at the time, and plaintiff cannot use her belief regarding the success of the temporary accommodation to show that defendant's failure to extend it permanently was pretextual. Moreover, the undersigned agrees with defendant that the fact that the SEC ultimately granted full-time telework is sufficient "to dispel any suggestion of pretext." (Def.'s Reply 17.)

As to plaintiff's contentions regarding the CBAs, the undisputed facts show that the only instance in which the old CBA contemplated permanent, full-time telework was under the pilot program, for which Ms. Solloway admitted she was not eligible. Plaintiff is correct (and the SEC admits) that the new CBA did allow full-time telework, which is why the SEC ultimately granted her that accommodation. The undersigned cannot infer an intent to retaliate from the bare fact that it took the SEC several months from the date the new CBA was agreed upon to implement the change, particularly given the undisputed fact that the process involved new technological improvements. Finally, the undersigned discusses plaintiff's contentions regarding Mr. Lasseigne infra Part III.C.n.108.

Accordingly, the undersigned **REPORTS** that plaintiff has failed to establish her RHA retaliation claim (Count III) and **RECOMMENDS** that summary judgment be granted in favor of the SEC on that claim.[107]

### C.    Plaintiff's RHA Discrimination Claim (Count IV)

The <u>McDonnell Douglas</u> burden-shifting framework also applies to Ms. Solloway's claims of discrimination under the RHA.  <u>See</u> <u>Jackson</u>, 608 F. App'x at 741-42.  To establish a prima facie case of discrimination, plaintiff must establish that: (1) she has a disability, (2) she was otherwise qualified to perform the job, and (3) she was discriminated against, i.e., suffered an "adverse employment action," "solely by reason" of that disability.  <u>See</u> 29 U.S.C. § 794(a); <u>Garrett</u>, 507 F.3d at 1310-11.

---

[107] Plaintiff cites <u>Soloski v. Adams</u>, 600 F. Supp. 2d 1276, 1362 (N.D. Ga. 2009) for the contention that "a series of incidents involving reprimands and other negative treatment of an employee who had [engaged in protected conduct] could, when taken together, constitute adverse employment actions for the purposes of presenting a prima facie case of retaliation[]."  (Pl.'s Resp. 26.)   While the Eleventh Circuit does recognize a retaliatory hostile work environment claim, <u>see</u> <u>Gowski v. Peake</u>, 682 F.3d 1299, 1312 (11th Cir. 2012) (per curiam), as defendant observes, plaintiff stipulated to withdraw her claims of harassment and hostile work environment under the RHA (Counts II and V).   (<u>See</u> Joint Stipulation to Withdraw Claims.)

99

Defendant acknowledges that plaintiff separately pled her RHA failure to accommodate and discrimination claims in the Second Amended Complaint but states that she "conflates these claims" in the Response, where she argues discrimination based on failure to accommodate.  (Def.'s Reply 1 n.1.)  The undersigned agrees with defendant that plaintiff appears to have conflated her RHA discrimination claim with her RHA accommodation claim.  (See Pl.'s Resp. 23, § 3 ("To make a claim for discrimination based on disability, Solloway can either show that she suffered an adverse employment action because of her disability or show that her employer failed to give her a reasonable accommodation that did not pose an undue hardship. There is sufficient evidence that a jury could determine that Defendant failed to reasonably accommodate Solloway.").)

Claims that are alleged in a complaint but not addressed in response to a motion for summary judgment are deemed abandoned.  See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); Hudson v. Norfolk S. Ry. Co., 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.").  Because plaintiff abandoned

100

her RHA discrimination claim by failing to argue that it should survive summary judgment, the undersigned **RECOMMENDS** that summary judgment be **GRANTED** for defendant on plaintiff's RHA discrimination claim (Count IV).[108]

## IV.   CONCLUSION

For the reasons explained above, the undersigned **RECOMMENDS** that defendant's Motion for Summary Judgment [110] be **GRANTED** as to plaintiff's remaining claims, Counts I, III, and IV.

The Clerk is **DIRECTED** to terminate the reference to the Magistrate Judge.

---

[108] Even had Ms. Solloway not abandoned her RHA discrimination claim, it would not survive summary judgment.  As an initial matter, as discussed supra III.A.2, plaintiff has failed to show that she was qualified to perform her job.  Moreover, to the extent she relies on Mr. Lasseigne as a comparator (see Pl.'s Resp. 28-29 (relying on Mr. Lasseigne to show pretext)), he is not similarly situated to Ms. Solloway.  While he was granted full-time telework for twelve weeks after surgery, this is substantially different than the accommodation plaintiff sought, which was full-time telework (as well as the ability to never come into the ARO).  Regarding the fact that Mr. Lasseigne was later able to telework four days per week under a permanent arrangement, this was allowed under the pilot program provided under the old CBA, for which, as already discussed, plaintiff was not eligible.  Accordingly, he cannot serve as a proper comparator.

**SO RECOMMENDED**, this 15th day of February, 2017.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

102